## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INNOVATIVE PATENTS, L.L.C. and FORCEFIELD, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No._____ |
| BRAIN-PAD, INC., | ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendant. | ) | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Innovative Patents, L.L.C., and Forcefield, LLC, for their complaint against defendant Brain-Pad, Inc., allege as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff Innovative Patents, L.L.C. ("Innovative") is a limited liability company duly organized and existing under the laws of the State of New Jersey, with a principal place of business at One University Plaza, Suite 405, Hackensack, New Jersey 07601.

2.      Plaintiff Forcefield, LLC ("Forcefield") is a limited liability company duly organized and existing under the laws of the State of New Jersey, with a principal place of business at One University Plaza, Suite 405, Hackensack, New Jersey 07601.

3.      Upon information and belief, defendant Brain-Pad, Inc. ("Brain-Pad") is a corporation duly organized and existing under the laws of the State of Pennsylvania, and has a principal place of business at 322 Fayette Street, Conshohocken, Pennsylvania 19428.

4.    Upon information and belief, Brain-Pad conducts and engages in business and business related activities in, and having effects within, the State of Delaware and this judicial district.

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332, 1338(a) and 1367.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b).  Upon information and belief, Brain-Pad resides in this judicial district.

## INFRINGEMENT OF U.S PATENT NO. 7,234,174

7.    Innovative and Forcefield repeat, re-allege and incorporate the allegations set forth in paragraphs 1 through 6 of the Complaint as if fully set forth herein.

8.    This cause of action is an action for patent infringement brought under the patent laws of the United States, 35 U.S.C. Part 1.

9.    On June 26, 2007, United States Patent No. 7,234,174 ("the '174 patent") was duly and legally granted to Carl J. Abraham for an invention entitled "Apparatus for Enhancing Absorption and Dissipation of Impact Forces for Sweatbands".  The '174 patent matured from application Serial No. 11/281,073, filed on November 17, 2005, which is a continuation-in-part of application Serial No. 10/225,866, filed on August 2, 2002, now U.S. Patent No. 6,675,395.  A true copy of the '174 patent is attached to this Complaint as Exhibit A.

10.    Innovative is the owner of all right and title to the '174 patent by virtue of the assignment recorded in the records of the United States Patent and Trademark Office ("USPTO") at Reel 019930, Frame 0361.

11.    Forcefield is a licensee under the '174 patent having a right to sue for past and continuing infringement of the '174 patent.

12.     Upon information and belief, Brain-Pad has infringed and is infringing the '174 patent by making, using, selling and offering for sale within the United States, including within the District of Delaware and elsewhere, apparatuses for enhancing force absorption and dissipation of forces, including the Brain-Pad Impact Protective Headband, that infringe the '174 patent, and Brain-Pad will continue to do so unless enjoined by this Court.

13.     Upon information and belief, Brain-Pad has induced and is inducing others to infringe the '174 patent, and Brain-Pad will continue to do so unless enjoined by this Court.

14.     Upon information and belief, Brain-Pad has contributed and is contributing to the infringement by others of the '174 patent, and Brain-Pad will continue to do so unless enjoined by this Court.

15.     Upon information and belief, Brain-Pad has had actual notice of Innovative's and Forcefield's '174 patent rights, and has continued, notwithstanding such notice, to willfully and deliberately infringe, and induce and contribute to the infringement by others of, the '174 patent, and will continue in the future to willfully and deliberately infringe, and induce and contribute to the infringement by others of, the '174 patent unless enjoined by this Court.

WHEREFORE, Innovative and Forcefield demand judgment against Brain-Pad as follows:

(A) that the '174 patent is valid and enforceable;

(B) that Brain-Pad has directly infringed, and induced and contributed to the infringement by others of, the '174 patent;

(C) that Brain-Pad be preliminarily and permanently enjoined from infringing, inducing others to infringe, or contributing to the infringement by others of, the '174 patent;

(D) that Brain-Pad be ordered to account for and pay to Innovative and Forcefield the damages to which Innovative and Forcefield are entitled as a consequence of Brain-Pad's

infringement, inducement of others to infringe, or contribution to the infringement by others of, the '174 patent;

(E) that in view of Brain-Pad's willful, deliberate and intentional acts of infringement, and inducing or contributing to the infringement by others, of the '174 patent, this case be declared exceptional pursuant to 35 U.S.C. § 285 and any damages awarded be trebled;

(F) that Innovative and Forcefield be awarded their costs and reasonable attorneys fees; and

(G) that this Court grant such other legal and equitable relief it deems is just and proper.

## JURY DEMAND

Innovative and Forcefield hereby demand a trial by jury on all issues raised in this Complaint that are triable by jury.

Dated:   October 29, 2007

PRICKETT, JONES & ELLIOTT, P.A.

By:

Elizabeth M. McGeever (#2057)
J. Clayton Athey (#4378)
1310 King Street, P.O. Box 1328
Wilmington, DE 19899-1328
emmcgeever@prickett.com
jcathey@prickett.com
Ph: (302) 888-6500
*Attorneys for Plaintiffs*
*Innovative Patents, L.L.C. and Forcefield, LLC*

Of Counsel:

Joseph J. Fleischman, Esq.
William R. Robinson, Esq.
Davy E. Zoneraich, Esq.
NORRIS MCLAUGHLIN & MARCUS, P.A
P.O. Box 1018
Somerville, New Jersey 08876-1018
Ph: (908) 722-0700

**Exhibit A**



US007234174B2

(12) **United States Patent**
  Abraham

(10) Patent No.: **US 7,234,174 B2**
(45) Date of Patent: **Jun. 26, 2007**

(54) **APPARATUS FOR ENHANCING ABSORPTION AND DISSIPATION OF IMPACT FORCES FOR SWEATBANDS**

(76) Inventor: **Carl J. Abraham**, 3 Baker Hill Rd., Great Neck, NY (US) 11023

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **11/281,073**

(22) Filed: **Nov. 17, 2005**

(65) **Prior Publication Data**

US 2006/0064798 A1    Mar. 30, 2006

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 10/225,866, filed on Aug. 22, 2002, now Pat. No. 6,675,395.

(51) **Int. Cl.**
*A63B 71/10*    (2006.01)
(52) **U.S. Cl.** ........................................... **2/425**
(58) **Field of Classification Search** .................... 2/425, 2/181, 411, DIG. 2, DIG. 11
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 1,434,854 | A * | 11/1922 | Stall | 2/171 |
| 5,377,360 | A * | 1/1995 | Fleitman | 2/181 |
| 5,598,585 | A * | 2/1997 | Stroup | 2/171 |

| | | | | |
|---|---|---|---|---|
| 5,930,841 | A * | 8/1999 | Lampe et al. | 2/411 |
| 5,946,734 | A * | 9/1999 | Vogan | 2/412 |
| 5,963,989 | A * | 10/1999 | Robertson | 2/411 |
| 6,247,181 | B1 * | 6/2001 | Hirsch et al. | 2/207 |
| 6,266,827 | B1 * | 7/2001 | Lampe et al. | 2/414 |
| 6,397,399 | B1 * | 6/2002 | Lampe et al. | 2/425 |
| 6,438,761 | B1 * | 8/2002 | McGarrity | 2/410 |
| 6,675,395 | B1 * | 1/2004 | Abraham | 2/425 |
| 6,978,487 | B2 * | 12/2005 | Abraham | 2/425 |
| 2002/0069452 | A1 * | 6/2002 | Knappl | 2/411 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| DE | 4240643 | A1 * | 1/1994 |
| WO | WO 9324026 | A1 * | 12/1993 |
| WO | WO 2005000057 | A2 * | 1/2005 |

* cited by examiner

*Primary Examiner*—Gary L. Welch

(57) **ABSTRACT**

A sweatband designed to be worn on a user for usage in a variety of sporting activities. The sweatband comprises inserts for the purpose of protecting the user, which may be permanently placed or removable. In the preferred mode, the inserts are polymeric and function to absorb and dissipate impact forces with which the user comes in contact. Importantly, the inserts may be strategically placed within the sweatband, such as in the areas most vulnerable to concussion or injury upon impact. In an alternate embodiment, the polymeric inserts may be removed from the sweatband. In total, the invention provides a novel, lightweight means to protect the athlete, while effectively functioning to absorb perspiration.

**9 Claims, 2 Drawing Sheets**







12B

12A

12

10

16

Fig. 1



Fig. 2

US 7,234,174 B2

| 1 | 2 |

## APPARATUS FOR ENHANCING ABSORPTION AND DISSIPATION OF IMPACT FORCES FOR SWEATBANDS

This application is a continuation in part of application Ser. No. 10/225,866, filed Aug. 22, 2002 by the present Applicant, now U.S. Pat. No. 6,675,395.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention is a sweatband for sporting activities that is designed to absorb both perspiration and impact forces. The sweatband may be worn on the head, including under a pre-existing helmet, and may also be worn on the lower legs, upper legs, wrists and forearms.

2. Description of the Prior Art

Numerous innovations for protective devices have been provided in the prior art that are described as follows. Even though these innovations may be suitable for the specific individual purposes to which they address, they differ from the present invention as hereinafter contrasted. The following is a summary of those patents most relevant to the invention, as well as a description outlining the differences between the features of the present invention and those of the prior art.

1. U.S. Pat. No. 6,000,062, by Trakh, Entitled "Protective Headband For Soccer Players"

The patent to Trakh describes improved head protection for soccer players comprising a headband formed of resilient material which may be worn alone or inside a conventional soccer helmet to cushion the effects of impacts to the head, especially for children in their formative years.

2. U.S. Pat. No. 4,613,993, Invented by Steele et al. Entitled "Protective Head Gear With Tubular Rings"

The Steele et al. invention describes protective head gear comprising a plurality of concentric tubular rings formed of soft, yieldable material. The rings are filled with non-flamable, light, yieldable material, are gradually reduced diametrically and joined by flexible ribbons. A chin strap and a rear support strap detachably maintain the rings on the head of the user.

3. U.S. Pat. No. 5,930,841, Invented by Lampe et al., Entitled "Soccer Headguard"

The Lampe et al. invention relates to an improved headguard for athletes and in particular soccer players. In accordance with one embodiment of the invention, a headguard is provided which includes a headcover and an adjustable head strap disposed on a perimeter of the head for drawing sections of the headcover together. The headcover includes padding having at least a front portion and a top portion and also includes a flexing section. The flexing section of the headcover is positioned such that, when the head strap is adjusted, at least a portion of the headcover flexes at the flexing section to generally conform to at least a portion of the head of a wearer.

4. U.S. Pat. No. 6,349,416, Invented by Lampe et al., Entitled "Headguard-Protective Sports Headband"

The patent to Lampe et al. describes a protective headguard to be worn by an athlete having a protective central pad, a rear pad, an adjustable strap system interconnecting the rear pad and the central pad, and one or more of a lack of any protective padding which would cover the side of the athlete's head when the headguard is worn, a channel defined by the central pad extending substantially horizon-

tally above the athlete's brow ridges and below the athlete's frontal bone when the headguard is worn, a slot in the rear pad extending substantially vertically from the athlete's occipital bone and accommodating passage of a ponytail when the headguard is worn, a single unitary liner, bands encircling the central pad and releasably securing a liner to the central pad, a removable sleeve, a spine pad extending from the front panel to the rear pad perceptible lines of demarcation on the exterior surface of the central pad.

5. U.S. Pat. No. 6,247,181, Invented by Hirsch et al. Entitled "Bandana-Head Protector Using Fabric And Closed Cell Foam"

The Hirsch et al. invention provides a device designed to reduce head injuries among soccer players, and others who would not otherwise wear head protection. It integrates closed-cell foam padding into a traditional bandana form. Foam padding is sewn between layers of fabric in positions which will provide a degree of protection from rotational forces and from direct blows to the forehead, sides, and top of the head.

6. U.S. Pat. No. 4,896,378, Invented by Campana, Entitled "Protective Wrist Band"

The patent to Campana describes a protective wrist band having a composite body adapted to extend around a wearer's wrist and having complementary connector means on opposite ends for releasably holding the band around the wrist. The wrist band body has an inner layer of a porous, absorbent, fabric material and a thicker shock-absorbing outer layer of a resilient, fluid-impervious, rubber-like closed cell material.

7. U.S. Pat. No. 5,329,638, Invented by Hansen et al., Entitled "Protective Wristband"

The patent Hansen et al. describes a protective wristband with integrally woven inner and outer layers of an absorbent stretchable material to provide an endless hollow interior, and a cushioned shield disposed between the layers such that the shield is concealed to provide the appearance of a conventional, unprotective wristband.

8. U.S. Pat. No. 5,175,887, Invented by Kim, Entitled "Absorbent Headband"

In the patent to Kim, an absorbent headband is provided which includes a resilient inner frame and one or more absorbent outer covers. The outer cover is generally tubular, and closed at each end. The outer cover is provided with a slot for removably inserting the inner frame member into the interior of the outer cover. A method is provided for absorbing perspiration which includes the steps of providing a resilient inner member which is generally u-shaped, providing a tubular outer cover, inserting the inner member into the outer cover, and placing the headband on the head of the wearer.

9. U.S. Pat. No. 4,947,488, Invented by Ashinoff, Entitled "Forehead Guard"

The Ashinoff invention describes a forehead guard consisting of a closed loop of a terrycloth or similar stretch material tube and an unattached semi-circular plastic shock-absorbing member within the tube adapted to assume a forehead position on the user while the terrycloth tube is stretched about the back of the user's head to complete the positioning thereof.

The sweatbands of the prior art generally illustrate wide sweatbands without inserts, lightweight helmets with multiple open areas, head protecting items in the style of bandanas, forehead protective plates, and protective wrist bands.

US 7,234,174 B2

3

4

In contrast, the present invention is a sweatband that comprises foam or polymeric inserts which function to absorb and dissipate impact forces.

In the embodiment worn on the head in conjunction with a helmet, due to the presence of an additional layer beneath the helmet, it takes additional time for impact forces to reach the user's head, thus providing greater protection.

Moreover, the open spaces provided by the design allow for an additional dimension of protection, as impact forces must travel additional distances to reach the user. As such, the spreading of forces allows the present invention to provide significantly greater absorption and dissipation that the prior art.

Furthermore, the inserts aforementioned are placed within the sweatband in areas most vulnerable to concussion or injury. In one mode, the inserts may be removed so that both the inserts and sweatband may be conveniently washed. The sweatbands may also be washed with the inserts permanently in place. In total, the invention provides a novel means to better protect the athlete, while effectively functioning to absorb perspiration.

SUMMARY OF THE INVENTION

The present invention is an improved, protective sweatband designed to be worn on the head, upper legs, lower legs, or wrists and forearms of a user

In the preferred mode, the invention is worn on the head of a user engaged in activities such as soccer, now the most popular team sport in the United States amongst both boys and girls. The American Academy of Pediatrics classifies soccer as a contact/collision sport and most contact sports use protective headgear. Soccer is the only sport in the world that encourages children to use their heads to hit the ball, yet no protective headgear is worn.

The invention may also be used in conjunction with a previously-existing helmet for optimal protection. This renders the device suitable for usage in connection with a host of other sporting activities, including football, hockey, lacrosse, cycling, skateboarding, and many other applications.

In one mode of manufacture, the device of the present invention comprises a "horizontal" sweatband portion, much like a typical headband. It includes protective inserts of foam padding or a semi-rigid material, within a generally tubular perspiration-absorbing fabric. Ends of the tubular band are joined with one another via means selected from the group consisting of snaps, hook and loop fasteners, or buttons to effectively contain the inert(s) and provide a secure fit for the user. Alternatively, the ends of the band may be permanently affixed to one another by being sewn together.

In an enhanced mode, the horizontal sweatband may be affixed to a "vertical" portion, in a cross pattern configuration, perpendicular to the horizontal portion. As such, the vertical portion extends from the user's forehead, over the crown of the head to the back of the head, also including apertures for insertion of protective inserts to provide additional protection.

In still another headband embodiment, a total of three such bands are utilized for maximum coverage of critical areas of the head. In any instance, the sweatband of the present invention functions to effectively absorb perspiration in the traditional sense, as well as provide an appropriate level of ventilation and breathing, reducing heat in the process. The sweatband is also expandable, much in the manner of a traditional headband.

When the sweatband is used beneath a helmet, it takes additional time for impact forces to reach the user's head, thus providing greater protection. Moreover, the open spaces provided by the design allow for an additional dimension of protection, as impact forces must travel additional distances to reach the user. As such, the spreading of forces allows the present invention to provide significantly greater absorption and dissipation that the prior art.

In another embodiment, the sweatband is designed to be placed around a lower leg area of a user, at least one insert is placed within the sweatband, and the insert positioned to protect a shin of a user. In this embodiment, the width of the sweatband may be approximately as wide as the shin area. The overall circumference may be reduced to fit snugly around the calf area to protect the entire shin. In the preferred mode, hook and loop fasteners or Velcro® can be used to adjust the fit as desired.

Likewise, in an additional embodiment, the sweatband is designed to be placed around an upper leg area of a user, at least one insert is placed within the sweatband, and the insert positioned to protect at least the hamstring area. In this instance, the width of the band is increased to protect the hamstring area. The overall circumference of the band may be reduced so that the band fits snugly around the hamstring area. In this embodiment, hook and loop fasteners or Velcro® may be used to adjust the fit as desired.

Furthermore, in another embodiment, the sweatband is designed to be placed around the knee of a user, at least one insert is placed within the sweatband, and the insert positioned to protect this critical area. In this instance, the width of the band is increased to sufficiently protect the knee. The overall circumference of the band may be reduced so that the band fits snugly around the knee, and hook and loop fasteners or Velcro® may be used to adjust the fit as desired.

Moreover, the sweatband may be designed to be placed around an arm of a user, in which case at least one insert is placed within the sweatband, and the insert positioned to protect the wrist and forearm area. In this instance, the width of the band is increased to protect the wrist and forearm area. The overall circumference of the band may be reduced so that the band fits snugly around the wrist and forearm area. As with the above-noted embodiments, hook and loop fasteners or Velcro® may be used to adjust the fit as desired.

In addition, the sweatband may comprise removable polymeric inserts for the purpose of protecting the user. This provides the user with the option of utilizing only the sweatband portion beneath the helmet, if desired. As noted, the inserts are either foam-like or polymeric, functioning to absorb and dissipate impact forces with which the user comes in contact. General studies have shown that properly placed foam padding may reduce impact forces by better than thirty (30) percent.

Regarding the specific impact absorption performance characteristics of the sweatbands of the present invention, following is a summary of the results of preliminary pilot testing.

The independent measure of interest was peak G (i.e. impact deceleration). The dependent variable of impact velocity and energy were held constant at 1.9 m/s and 9.2 J, respectively. An ISO headform (size L–medium adult) with triaxial accelerometer (Kistler) mounted at the approximate center of mass was dropped by means of a bi-rail basket guide (similar to CEN 960 for ice hockey) from a height of 30 cm (see FIG. 1)

US 7,234,174 B2

5

Ten initial tests were conducted without any sweatbands mounted to provide baseline measures. Three impacts per sample were conducted with approximately 30 seconds between impacts.

The initial ten impacts without sweatbands produced peak G values of 652.4 G's. With the sweatbands of the present invention introduced, impact absorption (i.e. the ratio between no sweatband versus with sweatband) demonstrated values up to 83% (average of three impacts). Such illustrates the benefits of usage of the present invention as compared to all prior art.

Importantly, the inserts of the resent invention may be of a variety of widths, and may be strategically placed within the sweatband, such as in the areas most vulnerable to concussion or injury upon impact. As such, a three to five inch curved section of padding material is located in the forehead area in the preferred mode of manufacture.

The concussion rate reported in soccer is reported to be the same as in tackle football. Thus, precise placement of the appropriate forehead protective insert is significant in several respects. Precise placement of the appropriate forehead protective insert is significant in reducing the incidence of concussion and other injury, and is particularly important with regard to children who may be inexperienced in playing the sport in question, rendering more susceptible to collisions. Such necessitates usage of the present invention, which provides a lightweight and non-burdensome means to absorb and dissipate a substantial portion of the impact forces associated with collisions.

Young children dashing around a playing field can bash their heads together, get kicked in the head, experience player-to-player contact, have their heads hit the ground, come in contact with a goal post, or inadvertently get hit in the forehead area with the ball.

The Consumer Product Safety Commission has recently raised awareness regarding the risk of concussion from head injuries. Moreover, the risk of sustaining a concussion is especially high for children. Accordingly, the frontal forehead and temporal area must be protected better than any other area. Although it may not prevent it, the present invention reduces the incidence of concussion.

Second concussions are particularly damaging when players have yet to fully recover from first concussions. It should also be noted that many children engage in physical play in which elbows commonly strike the head in the forehead area. Frequently, children do not fully recover from such concussions. The present invention also serves to mitigate the incidence of cuts and bruises associated with such collisions.

With regard to the enhanced embodiments of the present invention, the crown of the head may be protected by a relatively small protective insert, such as a curved two inch piece of foam or semi-rigid polymer.

Regarding the practicality of the invention, the polymeric inserts may be removed from the sweatband so that both the sweatband and inserts may be conveniently washed. The sweatband may also be washed with the inserts in place, if desired. Moreover, the invention uniquely acts as a two-sided sweatband. When one side is wet, the reverse side can then be used, allowing the wet side to dry. Thus, in total, the invention provides a novel means to further protect the head of the athlete, while effectively functioning to absorb perspiration.

Moreover, the present invention may be manufactured in a variety of sizes, so as to render the benefits of same available to athletes of all ages.

6

Likewise, in order to render the sweatband effective for usage in a variety of applications, both the insert and sweatband itself may be of a variety of widths, tailored to the portion of the head intended to be protected by same. A varying quantity of foam or semi-rigid inserts may also be utilized, depending upon the sport for which the sweatband is intended to be used.

In summation, in light of the foregoing, it is an object of the present invention to provide protective sweatbands that are used by players of many sports, including children.

It is a further object of the invention to provide protective sweatbands that are lightweight, cool and comfortable to wear and use, and relatively inexpensive to manufacture.

It is an additional object of the invention to provide protective sweatbands that provides significantly greater absorption and dissipation of impact forces due to the presence of an additional layer of protection, and due to the open spaces in the design.

It is another object of the invention to provide sweatbands that are manufactured in a variety of previously determined sizes.

Finally, another object of the invention is to provide sweatbands with protective inserts that may be permanently placed therein or removed.

The novel features which are considered characteristic for the invention are set forth in the appended claims. The invention itself, however, both as to its construction and its method of operation, together with additional objects and advantages thereof, will be best understood from the following description of the embodiments when read and understood in connection with accompanying drawings.

DESCRIPTION OF DRAWINGS

FIG. 1 is a front perspective view of the sweatband of the present invention, indicating general size and configuration of the foam or polymeric protective insert therefor.

FIG. 2 is a front perspective view of an alternate embodiment of the sweatband of the present invention, illustrating both horizontal and vertical sweatband members, and indicating general size and configuration of the foam or polymeric protective inserts therefor.

DETAILED DESCRIPTION

FIG. 1 is a front perspective view of the sweatband of the present invention, indicating general size and configuration of the foam or polymeric protective insert therefor. Specifically, sweatband (12) is manufactured of soft and pliable fabric or materials, much like traditional sweatbands and headbands. The sweatband (12) comprises an exterior portion (12A) and interior portion (12B).

Insert (16) is placed within the sweatband (12). Such may be permanently placed, or, alternatively, may be removable. In such instance, the insert may be placed in the sweatband through at least one aperture, which may be located either upon the exterior surface of the band (12A) for convenience and easy access, or, alternatively may be located upon the interior surface (12B) to maintain an aesthetically-pleasing appearance. In the preferred mode, insert (16) is relatively thin in nature, and may be in the form of foam padding or a semi-rigid, pliable polymer.

In the preferred head-worn mode, the device is a "horizontal" sweatband portion, much like a typical headband. This provides a protective device that is of a familiar shape to the user, and is easy to both put on and remove. Furthermore, the device keeps the user cool during play, while

US 7,234,174 B2

7

providing significantly more protection in the critical area of the forehead than achieved through usage of conventional sweatbands.

FIG. 2 is a front perspective view of an alternate embodiment of the sweatband of the present invention, illustrating both horizontal and vertical sweatband members, and indicating general size and configuration of the foam or polymeric protective inserts therefor. Once again, sweatband (12) comprises an exterior portion (12A) and interior portion (12B). Again, insert (16) may be permanently placed, or may be placed within the sweatband (12) through at least one aperture, which may be located either upon the exterior surface of the band for convenience and easy access, or, alternatively may be located upon the interior surface to maintain an aesthetically-pleasing appearance. The insert may also comprise apertures (22) which function to allow air to pass therethrough.

In the enhanced mode, the horizontal member is affixed to a "vertical" portion that is perpendicular to the horizontal portion, extending from the user's forehead, over the crown of the head, and to the back of the head. This provides additional protection to the user, as the insert located at the crown of the head also functions to effective absorb and dissipate impact forces in the event inadvertent contact is made with another player, ball or object.

In a further enhanced mode, the horizontal member is affixed to a "vertical" portion that is perpendicular to the horizontal portion, extending from the user's forehead, over the crown of the head, and to the back of the head, and is also affixed to a second vertical portion that crosses the first vertical portion, extending from a first side, over the crown of the head, and to a second side of the head. This provides still more protection to the user, as the additional band functions to effectively absorb and dissipate even more impact forces in the event contact is made with another player, ball or object.

Importantly, the open spaces provided by the design allow for an additional dimension of protection, as impact forces must travel additional distances to reach the user. As such, the spreading of forces allows the present invention to provide significantly greater absorption and dissipation that the prior art.

In any instance, the sweatband of the present invention comprises inserts for the purpose of protecting the user. In the preferred mode, the inserts are polymeric and function to absorb and dissipate impact forces with which the user comes in contact. Importantly, the inserts may be strategically placed within the sweatband, such as in the areas most vulnerable to concussion or injury upon impact. In one mode, the polymeric inserts may be removed from the sweatband so that the sweatband may be conveniently washed. In total, the invention provides an enhanced means to protect the athlete, while effectively functioning to absorb perspiration.

In relation to any embodiment, the insert may be manufactured of a polyethylene or semi-rigid material, polyurethane, or a combination of polymeric materials that have memory. The thickness of the insert may vary according to need, but in all instances, the insert functions to significantly improve the absorption and dissipation of primary forces to better protect the user.

In all such cases, the sweatbands may be manufactured in a variety of previously-determined sizes, functioning to render same effective for multiple persons.

8

With regards to all descriptions and graphics, while the invention has been illustrated and described as embodied, it is not intended to be limited to the details shown, since it will be understood that various omissions, modifications, substitutions and changes in the forms and details of the device illustrated and in its operation can be made by those skilled in the art without departing in any way from the spirit of the invention.

Without further analysis, the foregoing will so fully reveal the gist of the present invention that others can readily adapt it for various applications without omitting features that, from the standpoint of prior art, constitute essential characteristics of the generic or specific aspects of this invention. What is claimed as new and desired to be protected by Letters Patent is set forth in the appended claims.

What is claimed is:

1. An apparatus for enhancing absorption and dissipation of forces for sweatbands comprising:
   a soft, pliable sweatband of a generally annular configuration, the sweatband further comprising an exterior portion and interior portion,
   the sweatband designed to be placed around the head of a user, from the forehead to back of the head,
   at least one insert permanently placed within the sweatband, the insert relatively thin in nature and positioned to protect at least the forehead area of a user, the insert curved in configuration, the insert of sufficient length to protect an intended area and of sufficient width, the sweatband reversible, functioning to allow the interior portion to dry while the exterior portion is placed against the user,
   the apparatus functioning to absorb perspiration and absorb and dissipate impact forces, with only remaining forces distributed to the user.

2. The apparatus as described in claim 1, wherein the insert is soft, pliable padding material with consistent memory.

3. The apparatus as described in claim 1, wherein the insert is a semi-rigid polymeric material.

4. The apparatus as described in claim 3, wherein the polymeric material is selected from the ground consisting of polyurethane, polymers, and co-polymers, alone or in combination.

5. The apparatus as described in claim 1, wherein the insert comprises apertures which function to allow air to pass therethrough.

6. The apparatus as described in claim 1, wherein ends of the sweatband are permanently affixed to one another and the sweatband is slid over an area intended to be protected.

7. The apparatus as described in claim 1, wherein the apparatus is utilized in activities selected from the group consisting of soccer, basketball, football, hockey, baseball, softball, lacrosse, skiing, horseback riding, climbing, skateboarding, roller skating, cycling, motorcycling, automobile racing, and snowmobiling.

8. The apparatus as described in claim 1, wherein the inserts are manufactured in a variety of previously determined sizes, functioning to render the inserts effective for multiple previously determined sporting events.

9. The apparatus as described in claim 1, wherein the sweatband may be washed with the insert permanently in place.

* * * * *

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| | |
|---|---|
| **a) PLAINTIFFS**<br>INNOVATIVE PATENTS, L.L.C. and<br>FORCEFIELD, LLC | **DEFENDANTS**<br>BRAIN-PAD, INC. |
| **b)** County of Residence of First Listed Plaintiff   **BERGEN COUNTY**<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant   **MONTGOMERY COUNTY**<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
| **c)** Attorney's (Firm Name, Address, and Telephone Number)<br>ELIZABETH M. McGEEVER, ESQ.   (Bar ID # 2057)<br>PRICKETT, JONES & ELLIOTT, P.A., 1310 KING ST., WILMINGTON,<br>DELAWARE  19899 (302) 888-6500 | Attorneys (If Known) |

## BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government
    Plaintiff

☒ 3 Federal Question
    (U.S. Government Not a Party)

☐ 2 U.S. Government
    Defendant

☐ 4 Diversity
    (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>  &amp; Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>  Student Loans<br>  (Excl. Veterans)<br>☐ 153 Recovery of Overpayment<br>  of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>  Liability<br>☐ 320 Assault, Libel &<br>  Slander<br>☐ 330 Federal Employers'<br>  Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>  Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>  Product Liability<br>☐ 360 Other Personal<br>  Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury -<br>  Med. Malpractice<br>☐ 365 Personal Injury -<br>  Product Liability<br>☐ 368 Asbestos Personal<br>  Injury Product<br>  Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>  Property Damage<br>☐ 385 Property Damage<br>  Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure<br>  of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational<br>  Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>  28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☒ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>  Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/<br>  Exchange<br>☐ 875 Customer Challenge<br>  12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information<br>  Act<br>☐ 900Appeal of Fee Determinatio<br>  Under Equal Access<br>  to Justice<br>☐ 950 Constitutionality of<br>  State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** / ☐ 710 Fair Labor Standards Act / ☐ 720 Labor/Mgmt. Relations / ☐ 730 Labor/Mgmt.Reporting & Disclosure Act / ☐ 740 Railway Labor Act / ☐ 790 Other Labor Litigation / ☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY** / ☐ 861 HIA (1395ff) / ☐ 862 Black Lung (923) / ☐ 863 DIWC/DIWW (405(g)) / ☐ 864 SSID Title XVI / ☐ 865 RSI (405(g)) / **FEDERAL TAX SUITS** / ☐ 870 Taxes (U.S. Plaintiff or Defendant) / ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>  Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities -<br>  Employment<br>☐ 446 Amer. w/Disabilities -<br>  Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate<br>  Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | | | |

## ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
    Proceeding

☐ 2 Removed from
    State Court

☐ 3 Remanded from
    Appellate Court

☐ 4 Reinstated or
    Reopened

☐ 5 Transferred from
    another district
    (specify)

☐ 6 Multidistrict
    Litigation

☐ 7 Appeal to District
    Judge from
    Magistrate
    Judgment

**CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. SECTION 271

Brief description of cause:
INFRINGEMENT OF UNITED STATES PATENT

**VII. REQUESTED IN
COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION
  UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S)
IF ANY**

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
OCTOBER 29, 2007

SIGNATURE OF ATTORNEY OF RECORD

DE BAR # 4378

J. Clayton Athey

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____



AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____0 7 - 6 8 0_____

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ____3____ COPIES OF AO FORM 85.

_____     _____
      (Date forms issued)              (Signature of Party or their Representative)

                                 _____J. Clayton Athey (# 4378)_____
                                 (Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action

JCA
**PRICKETT, JONES & ELLIOTT, P.A.**
LAW OFFICES
1310 KING STREET
BOX 1328
WILMINGTON, DELAWARE 19899




045J83068815

neopost℠

$0.41⁰

11/01/2007

Mailed From 1980



**District Court of Delaware**
**District of Delaware**
**844 N. King Street, Room 4209**
**Wilmington, Delaware  19801**

19801+3513