# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INNOVATIVE PATENTS, L.L.C. and FORCEFIELD, LLC,<br><br>        Plaintiffs,<br><br>  v.<br><br>BRAIN-PAD, INC.,<br><br>        Defendant. | Civil Action No. 07-680 |

## ANSWER TO COMPLAINT,  AMENDED COUNTERCLAIMS,
### and
## DEMAND FOR JURY TRIAL

Defendant, Brain-Pad, Inc. ("answering defendant"), by way of Answer to the Complaint filed by plaintiffs, Innovative Patents, L.L.C. and Forcefield, LLC, hereby states that:

### Parties and Jurisdiction

1.      Answering defendant has insufficient knowledge to admit or deny the truth of the allegations asserted in this paragraph, and so leaves plaintiffs to their proofs.  To the extent that such allegations implicate any liability on the part of the answering defendant, such allegations are denied.

2.      Answering defendant has insufficient knowledge to admit or deny the truth of the allegations asserted in this paragraph, and so leaves plaintiffs to their proofs.  To the extent that such allegations implicate any liability on the part of the answering defendant, such allegations are denied.

3.      Admitted.

4.      The allegations of this paragraph are legal conclusions for which no answer is required. To the extent that such allegations implicate any liability on the part of the answering defendant, such allegations are denied.

5.      The allegations of this paragraph are legal conclusions for which no answer is required. To the extent that such allegations implicate any liability on the part of the answering defendant, such allegations are denied.

6.      The allegations of this paragraph are legal conclusions for which no answer is required. To the extent that such allegations implicate any liability on the part of the answering defendant, such allegations are denied.

## Infringement of U.S. Patent No. 7,234,174

7.      The answering defendant does hereby repeat and incorporate by reference the answers set forth in the foregoing paragraphs, as if more fully set forth herein.

8.      The allegations of this paragraph are legal conclusions for which no answer is required. To the extent that such allegations implicate any liability on the part of the answering defendant, such allegations are denied.

9.      Answering defendant has insufficient knowledge to admit or deny the truth of the allegations asserted in this paragraph, and so leaves plaintiffs to their proofs. To the extent that such allegations implicate any liability on the part of the answering defendant, such allegations are denied.

10.     Answering defendant has insufficient knowledge to admit or deny the truth of the allegations asserted in this paragraph, and so leaves plaintiffs to their proofs. To the extent that such allegations implicate any liability on the part of the answering defendant, such allegations are denied.

2

11.    Answering defendant has insufficient knowledge to admit or deny the truth of the allegations asserted in this paragraph, and so leaves plaintiffs to their proofs.  To the extent that such allegations implicate any liability on the part of the answering defendant, such allegations are denied.

12.    Denied.

13.    Denied.

14.    Denied.

15.    Denied.

WHEREFORE, answering defendant demands that the Complaint of the plaintiffs be dismissed in its entirety, with costs and counsel fees awarded to answering defendant.

### First Affirmative Defense
### (Invalidity of the '174 Patent)

Plaintiffs' claims are barred, in whole or in part, because the claims of the '174 Patent are invalid under 35 U.S.C. §§102, 103, and/or 112.

### Second Affirmative Defense
### (Unenforceability of the '174 Patent)

The '174 Patent is unenforceable because plaintiffs failed to disclose all non-cumulative, material prior art, of which plaintiffs were aware, to the United States Patent & Trademark Office during the prosecution of the '174 Patent.

### Third Affirmative Defense
### (Laches and estoppel)

The '174 Patent is unenforceable against the answering defendant since plaintiffs are guilty of laches and estoppel.

### Fourth Affirmative Defense
### (Unclean hands and inequitable conduct)

3

The '174 Patent is unenforceable against the answering defendant by reason of unclean hands and inequitable conduct on plaintiffs' part in the assertion of the '174 Patent.

## Fifth Affirmative Defense
### (Other Affirmative Defenses Based on Later Discovery Evidence)

The answering defendant reserves all affirmative defenses under Fed.R.Civ.Pro. 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses, at law or in equity, that may now exist or in the future may be available based on discovery and further factual investigation in this case.

## Amended Counterclaims

1.    These counterclaims are based upon the patent laws of the United States, 35 U.S.C. §1 *et seq.*

2.    These counterclaims constitute an action for declaratory judgment under 28 U.S.C. §2201.

3.    This court has jurisdiction over these counterclaims under 28 U.S.C. §§1331 and 1338(a).

4.    Venue of these counterclaims is proper under 28 U.S.C. §§1391 and 1400(b).

## Count I
### (Invalidity of '174 Patent)

5.    Defendant, Brain-Pad, Inc. ("Defendant") incorporates by reference, as if more fully set forth herein, and re-alleges paragraphs 1 through 3 of plaintiffs' Complaint.

6.    Upon information and belief, Defendant alleges that at least one prior art reference invalidates most, if not all, claims of United States Patent No. 7,234,174 ("the '174 patent") also known as the patent-in-suit, which was granted to Carl J. Abraham ("Mr. Abraham") for an invention entitled "Apparatus for Enhancing Absorption and Dissipation of Impact Forces for Sweatbands." The '174 patent matured from application no. 11/281,073 ("the

'073 application"), which is a continuation-in-part of application no. 10/225,866, filed on August 2, 2002, which is now patent no. 6,675,395 of the same title ("the '395 patent"). A true and correct copy of the '174 patent is attached hereto as Exhibit A.

7.    Plaintiffs have charged Defendant with infringement of the '174 patent, and the Defendant has denied any infringement of it and has further denied that the patent is valid and enforceable.

8.    Therefore, there exists an actual and justiciable controversy between plaintiffs and Defendant with respect to Defendant's purported infringement of the patent and its validity.

9.    Defendant has not infringed, and is not now infringing, either directly or in a contributory fashion, and has not induced others to infringe, the '174 patent.

10.    The '174 patent is invalid and void for failing to comply with requirements of patentability under the provisions of 35 U.S.C. §§102, 103 and/or 112.

11.    Unless plaintiffs are permanently enjoined from doing so, plaintiffs will continue to bring charges of infringement and acts of enforcement or suit based upon the '174 patent against Defendant and those in privity with Defendant, including Defendant's customers and prospective customers.

## Count II
### (Inequitable Conduct/Unenforceability of the '174 Patent)

12.    Defendant does hereby repeat and incorporate by reference the answers set forth in the foregoing paragraphs of the Counterclaim, as if more fully set forth herein.

13.    On July 18, 2005, Mr. Joseph S. Manzo ("Mr. Manzo"), President of Defendant, filed United States Provisional Patent Application No. 60/700,128 with the United States Patent and Trademark Office ("USPTO") for an invention entitled "Protective Athletic Band" for a thin,

perforated-insert, impact-dissipating and perspiration-absorbing athletic band that can be worn about the head and other parts of the body.

14.    The '073 application (which matured into the '174 patent) was filed on November 17, 2005 -- four months after Mr. Manzo's provisional patent application discussed in Paragraph 13. The '073 application underwent drastic revisions in relation to the specification of the '395 patent. A true and correct copy of the '395 Patent is attached hereto as Exhibit B.

15.    Following his July 18, 2005, provisional application, Mr. Manzo filed United States Patent Application No. 11/419,560 on May 22, 2006, (" Defendant's '560 application"). A true and correct copy of Defendant's '560 application is attached hereto as Exhibit C.

16.    On October 11, 2006, counsel for Innovative Patents, LLC sent a letter to Defendant indicating that Plaintiffs had been tracking Defendant's products, and requesting that Defendant "immediately cease and desist from such activities relating to [its] sweatband products." A true and correct copy of plaintiff's counsel's October 11, 2006, letter is attached hereto as Exhibit D.

17.    On October 30, 2006, Defendant's counsel replied (the "reply letter") to plaintiff's counsel's letter of October 11, 2006. In the reply letter, Defendant's counsel expressly notified plaintiff's counsel that Defendant had filed a U.S. patent application and a patent cooperation treaty application with the USPTO, which featured a protective sweatband invention. A true and correct copy of the reply letter of October 30, 2006, is attached hereto as Exhibit E.

18.    In the reply letter, Defendant's counsel also notified plaintiff's counsel that he had conducted two prior art searches, and that the specifications in Defendant's pending applications

set forth in detail the structural distinctions between Defendant's invention and the sweatbands taught in the '395 patent, among others. *See* Exhibit E.

19.     On January 18, 2007, Defendant's '560 application was published by the USPTO as Published United States Patent Application No. 2007/0011796. *See* Exhibit C.

20.     Thereafter, on March 30, 2007 -- and with full knowledge of Defendant's '560 application, which was now published -- Mr. Abraham amended the '073 application via facsimile to the USPTO requesting that the following language be inserted into page 18, line 8 of the specification: "The insert may also comprise apertures (22) which function to allow air to pass therethrough." Corresponding amended drawings illustrating those "apertures" were concurrently faxed to the USPTO. A true and correct copy of Mr. Abraham's March 30, 2007, facsimile amendment to the '073 application is attached hereto as Exhibit F (emphasis added).

21.     The '073 application did not include any mention of "apertures" prior to March 30, 2007.

22.     Defendant's '560 application, which published on January 18, 2007, as Published United States Patent Application No. 2007/0011796, clearly discloses apertures for allowing air to pass therethrough for cooling the wearer of the sweatband.

23.     37 C.F.R. § 1.56 states: "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section."

24.     Mr. Abraham did not disclose Defendant's '560 application as prior art to the USPTO in his March 30, 2007, facsimile Amendment or at any other time during prosecution of the '073 application.

25.    Claim No. 5 of the '174 patent states as follows: "The apparatus as described in claim 1, wherein the insert comprises <u>apertures</u> which function to allow air to pass therethrough." *See* Exhibit A (emphasis added).

26.    No product currently being made, used, offered for sale, or sold by Defendant is within the scope of any claim of the '174 Patent.

27.    No product made, used, offered for sale, or sold by Defendant since June 26, 2007 was within the scope of any claim of the '174 Patent.

28.    Upon information and belief, Defendant states that the '174 Patent is invalid and void under 35 U.S.C. §§102, 103, and 112, for one or more of the following reasons:

a)    The purported invention claimed in the patent was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, prior to its purported invention by the alleged inventor.

b)    The purported invention claimed in the patent was patented or described in a printed publication in this or a foreign country, or was in public use or sale in this country, more than one (1) year prior to the date of the application for a patent in the United States.

c)    The purported invention claimed in the patent was described in patents granted on applications for patents by others filed in the United States before the purported invention by the alleged inventor.

d)    The alleged inventor did not himself invent the subject matter sought to be patented.

e)    Before the inventor made the alleged invention claimed in the patent, the invention was made in this country by others who have not abandoned, suppressed, or concealed it.

f)    The differences between the subject matter sought to be patented and the prior art are such that the subject matter sought to be patented as a whole would have been obvious at the time the alleged invention was made to a person having ordinary skill in the art to which the subject matter pertains.

g)    The specification of the patent does not contain a written description of the purported invention in such full, clear, concise and exact terms as to enable a person skilled in the art to which it pertains to make and use it,

and does not set forth the best mode contemplated by the inventor in carrying out the invention.

h)    The claims of the patent do not particularly point out and distinctly claim the subject matter which the inventor regards as his invention.

i)    The claims of the patent are indefinite, ambiguous, uncertain, and incomprehensible.

j)    The subject matter claimed in the patent is substantially different from any inventions indicated, suggested, or described in the application for it.

29.    In view of the state of the prior art and the language of the claims of the '174 Patent, and by reason of the proceedings had or taken in the USPTO during and after the prosecution of the application for the patent, plaintiffs are estopped from maintaining that the claims of the '174 Patent have such scope as to cover and embrace any product that Defendant has made, used, offered for sale, or sold.

30.    The '174 Patent has not been and is not being infringed by Defendant and Defendant has not made, used, offered for sale, or sold any item or committed any act that comes within the scope of any claim made by the plaintiffs.

31.    The '174 Patent is unenforceable by reason of misuse of the patent by Plaintiffs, their agents, attorneys, and/or those in privity with plaintiffs by their anti-competitive attempts to assert the '174 Patent.

32.    On account of the foregoing, Defendant has and will continue to suffer injury and economic harm.

WHEREFORE, Defendant requests judgment against plaintiffs as follows:

a)    Plaintiffs' Complaint be dismissed with prejudice.

b)    Defendant be adjudged not to have infringed upon the '174 Patent.

c)    The '174 Patent be declared invalid and unenforceable.

d)    Plaintiffs be enjoined and restrained from all further charges of infringement and acts of enforcement of suit based upon the '174 Patent against Defendant, or anyone a privity with Defendant, including Defendant's customers and prospective customers.

e)    Judgment be entered against plaintiffs for three times all damages incurred by Defendant by reason of plaintiffs' violation of the anti-trust laws.

f)    Judgment be entered against plaintiffs for damages sustained by Defendant resulting from plaintiffs' anti-competitive actions.

g)    Defendant be awarded costs of suit and reasonable attorneys' fees, the amount to be fixed by this court, as provided by §285 of the Patent Act (35 U.S.C. §285), and §4 of the Clayton Act (15 U.S.C. §15).

h)    For such other relief as this court may deem just and equitable.

## Jury Demand

A jury trial is demanded as to all issues raised in plaintiffs' Complaint and Defendant's amended counterclaims.

Dated: February 19, 2008

ARCHER & GREINER, P.C.

*/s/ Charles J. Brown, III*

Charles J. Brown, III, Esq. (DE-3368)
cbrown@archerlaw.com
300 Delaware Avenue
Suite 1370
Wilmington , DE  19801
Telephone:    (302) 777-4350
Facsimile:    (302) 777-4352
And
John C. Connell, Esquire
jconnell@archerlaw.com
John F. Letchford, Esquire
jletchford@archerlaw.com
Stephanie A. Gannon, Esquire
sgannon@archerlaw.com
Archer & Greiner, P.C.
One Centennial Square
Haddonfield, NJ 08033
Telephone:    (856) 795-2121
Facsimile:    (856) 795-0574

Attorneys for Defendant, Brain-Pad, Inc.

3123326v1

11

## **CERTIFICATE OF SERVICE**

I, CHARLES J. BROWN, III, an attorney duly admitted to the bar of the State of Delaware, hereby certify that on February 19, 2008, I caused a copy of Defendant's Answer, Amended Counterclaims and Jury Demand to be served via first class mail and/or EFC on all counsel of record.

Elizabeth M. McGeever
J. Clayton Athey
PRICKETT, JONES & ELLIOTT, P.A
1310 King Street
Wilmington, DE 19801

and

Joseph J. Fleischman, Esquire
William R. Robinson, Esquire
Davy E. Zoneraich, Esquire
Norris, McLaughlin & Marcus, P.A.
P.O. Box 1018
Somerville, NJ  08876-1018

*/s/ Charles J. Brown, III*
Charles J. Brown, III (DE-3368)

# EXHIBIT "A"



US007234174B2

(12) **United States Patent**
Abraham

(10) **Patent No.:** US 7,234,174 B2
(45) **Date of Patent:** Jun. 26, 2007

(54) **APPARATUS FOR ENHANCING ABSORPTION AND DISSIPATION OF IMPACT FORCES FOR SWEATBANDS**

(76) Inventor: **Carl J. Abraham**, 3 Baker Hill Rd., Great Neck, NY (US) 11023

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **11/281,073**

(22) Filed: **Nov. 17, 2005**

(65) **Prior Publication Data**

US 2006/0064798 A1    Mar. 30, 2006

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 10/225,866, filed on Aug. 22, 2002, now Pat. No. 6,675,395.

(51) **Int. Cl.**
*A63B 71/10* (2006.01)

(52) **U.S. Cl.** ........................................ **2/425**

(58) **Field of Classification Search** .................. 2/425, 2/181, 411, DIG. 2, DIG. 11
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 1,434,854 | A | * | 11/1922 | Stall ............................. 2/171 |
| 5,377,360 | A | * | 1/1995 | Fleitman ........................ 2/181 |
| 5,598,585 | A | * | 2/1997 | Stroup .......................... 2/171 |

| | | | | |
|---|---|---|---|---|
| 5,930,841 | A | * | 8/1999 | Lampe et al. .................. 2/411 |
| 5,946,734 | A | * | 9/1999 | Vogan .......................... 2/412 |
| 5,963,989 | A | * | 10/1999 | Robertson ...................... 2/411 |
| 6,247,181 | B1 | * | 6/2001 | Hirsch et al. .................. 2/207 |
| 6,266,827 | B1 | * | 7/2001 | Lampe et al. .................. 2/414 |
| 6,397,399 | B1 | * | 6/2002 | Lampe et al. .................. 2/425 |
| 6,438,761 | B1 | * | 8/2002 | McGarrity ...................... 2/410 |
| 6,675,395 | B1 | | 1/2004 | Abraham ........................ 2/425 |
| 6,978,487 | B2 | * | 12/2005 | Abraham ........................ 2/425 |
| 2002/0069452 | A1 | * | 6/2002 | Knappl ......................... 2/411 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| DE | 4240643 A1 | * | 1/1994 |
| WO | WO 9324026 A1 | * | 12/1993 |
| WO | WO 2005000057 A2 | * | 1/2005 |

* cited by examiner

*Primary Examiner*—Gary L. Welch

(57) **ABSTRACT**

A sweatband designed to be worn on a user for usage in a variety of sporting activities. The sweatband comprises inserts for the purpose of protecting the user, which may be permanently placed or removable. In the preferred mode, the inserts are polymeric and function to absorb and dissipate impact forces with which the user comes in contact. Importantly, the inserts may be strategically placed within the sweatband, such as in the areas most vulnerable to concussion or injury upon impact. In an alternate embodiment, the polymeric inserts may be removed from the sweatband. In total, the invention provides a novel, lightweight means to protect the athlete, while effectively functioning to absorb perspiration.

**9 Claims, 2 Drawing Sheets**







12B

12A

12

10

16

Fig. 1



Fig. 2

US 7,234,174 B2

1

# APPARATUS FOR ENHANCING ABSORPTION AND DISSIPATION OF IMPACT FORCES FOR SWEATBANDS

This application is a continuation in part of application Ser. No. 10/225,866, filed Aug. 22, 2002 by the present Applicant, now U.S. Pat. No. 6,675,395.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention is a sweatband for sporting activities that is designed to absorb both perspiration and impact forces. The sweatband may be worn on the head, including under a pre-existing helmet, and may also be worn on the lower legs, upper legs, wrists and forearms.

### 2. Description of the Prior Art

Numerous innovations for protective devices have been provided in the prior art that are described as follows. Even though these innovations may be suitable for the specific individual purposes to which they address, they differ from the present invention as hereinafter contrasted. The following is a summary of those patents most relevant to the invention, as well a description outlining the differences between the features of the present invention and those of the prior art.

1. U.S. Pat. No. 6,000,062, by Trakh, Entitled "Protective Headband For Soccer Players"

The patent to Trakh describes improved head protection for soccer players comprising a headband formed of resilient material which may be worn alone or inside a conventional soccer helmet to cushion the effects of impacts to the head, especially for children in their formative years.

2. U.S. Pat. No. 4,613,993, Invented by Steele et al. Entitled "Protective Head Gear With Tubular Rings"

The Steele et al. invention describes protective head gear comprising a plurality of concentric tubular rings formed of soft, yieldable material. The rings which are filled with non-flamable, light, yieldable material, are gradually reduced diametrically and joined by flexible ribbons. A chin strap and a rear support strap detachably maintain the rings on the head of the user.

3. U.S. Pat. No. 5,930,841, Invented by Lampe et al., Entitled "Soccer Headguard"

The Lampe et al. invention relates to an improved headguard for athletes and in particular soccer players. In accordance with one embodiment of the invention, a headguard is provided which includes a headcover and an adjustable head strap disposed on a perimeter of the head for drawing sections of the headcover together. The headcover includes padding having at least a front portion and a top portion and also includes a flexing section. The flexing section of the headcover is positioned such that, when the head strap is adjusted, at least a portion of the headcover flexes at the flexing section to generally conform to at least a portion of the head of a wearer.

4. U.S. Pat. No. 6,349,416, Invented by Lampe et al., Entitled "Headguard-Protective Sports Headband"

The patent to Lampe et al. describes a protective headguard to be worn by an athlete having a protective central pad, a rear pad, an adjustable headstrap interconnecting the rear pad and the central pad, and one or more of a lack of any protective padding which would cover the side of the athlete's head when the headguard is worn, a channel defined by the central pad extending substantially horizon-

2

tally above the athlete's brow ridges and below the athlete's frontal bone when the headguard is worn, a slot in the rear pad extending substantially vertically from the athlete's occipital bone and accommodating passage of a ponytail when the headguard is worn, a single unitary liner, bands encircling the central pad and releasably securing a liner to the central pad, a removable sleeve, a spine pad extending from the front panel to the rear pad perceptible lines of demarcation on the exterior surface of the central pad.

5. U.S. Pat. No. 6,247,181, Invented by Hirsch et al. Entitled "Bandana-Head Protector Using Fabric And Closed Cell Foam"

The Hirsch et al. invention provides a device designed to reduce head injuries among soccer players, and others who would not otherwise wear head protection. It integrates closed-cell foam padding into a traditional bandana form. Foam padding is sewn between layers of fabric in positions which will provide a degree of protection from rotational forces and from direct blows to the forehead, sides, and top of the head.

6. U.S. Pat. No. 4,896,378, Invented by Campana, Entitled "Protective Wrist Band"

The patent to Campana describes a protective wrist band having a composite body adapted to extend around a wearer's wrist and having complementary connector means on opposite ends for releasably holding the band around the wrist. The wrist band body has an inner layer of a porous, absorbent, fabric material and a thicker shock-absorbing outer layer of a resilient, fluid-impervious, rubber-like closed cell material.

7. U.S. Pat. No. 5,329,638, Invented by Hansen et al., Entitled "Protective Wristband"

The patent Hansen et al. describes a protective wristband with integrally woven inner and outer layers of an absorbent stretchable material to provide an endless hollow interior, and a cushioned shield disposed between the layers such that the shield is concealed to provide the appearance of a conventional, unprotective wristband.

8. U.S. Pat. No. 5,175,887, Invented by Kim, Entitled "Absorbent Headband"

In the patent to Kim, an absorbent headband is provided which includes a resilient inner frame and one or more absorbent outer covers. The outer cover is generally tubular, and closed at each end. The outer cover is provided with a slot for removably inserting the inner frame member into the interior of the outer cover. A method is provided for absorbing perspiration which includes the steps of providing a resilient inner frame member which is generally u-shaped, providing a tubular outer cover, inserting the inner member into the outer cover, and placing the headband on the head of the wearer.

9. U.S. Pat. No. 4,947,488, Invented by Ashinoff, Entitled "Forehead Guard"

The Ashinoff invention describes a forehead guard consisting of a closed loop of a terrycloth or similar stretch material tube and an unattached semi-circular plastic shock-absorbing member within the tube adapted to assume a forehead position on the user while the terrycloth tube is stretched about the back of the user's head to complete the positioning thereof.

The sweatbands of the prior art generally illustrate wide sweatbands without inserts, lightweight helmets with multiple open areas, head protecting items in the style of bandanas, forehead protective plates, and protective wrist bands.

US 7,234,174 B2

3

In contrast, the present invention is a sweatband that comprises foam or polymeric inserts which function to absorb and dissipate impact forces.

In the embodiment worn on the head in conjunction with a helmet, due to the presence of an additional layer beneath the helmet, it takes additional time for impact forces to reach the user's head, thus providing greater protection.

Moreover, the open spaces provided by the design allow for an additional dimension of protection, as impact forces must travel additional distances to reach the user. As such, the spreading of forces allows the present invention to provide significantly greater absorption and dissipation that the prior art.

Furthermore, the inserts aforementioned are placed within the sweatband in areas most vulnerable to concussion or injury. In one mode, the inserts may be removed so that both the inserts and sweatband may be conveniently washed. The sweatbands may also be washed with the inserts permanently in place. In total, the invention provides a novel means to better protect the athlete, while effectively functioning to absorb perspiration.

SUMMARY OF THE INVENTION

The present invention is an improved, protective sweatband designed to be worn on the head, upper legs, lower legs, or wrists and forearms of a user

In the preferred mode, the invention is worn on the head of a user engaged in activities such as soccer, now the most popular team sport in the United States amongst both boys and girls. The American Academy of Pediatrics classifies soccer as a contact/collision sport and most contact sports use protective headgear. Soccer is the only sport in the world that encourages children to use their heads to hit the ball, yet no protective headgear is worn.

The invention may also be used in conjunction with a previously-existing helmet for optimal protection. This renders the device suitable for usage in connection with a host of other sporting activities, including football, hockey, lacrosse, cycling, skateboarding, and many other applications.

In one mode of manufacture, the device of the present invention comprises a "horizontal" sweatband portion, much like a typical headband. It includes protective inserts of foam padding or a semi-rigid material, within a generally tubular perspiration-absorbing fabric. Ends of the tubular band are joined with one another via means selected from the group consisting of snaps, hook and loop fasteners, or buttons to effectively contain the inert(s) and provide a secure fit for the user. Alternatively, the ends of the band may be permanently affixed to one another by being sewn together.

In an enhanced mode, the horizontal sweatband may be affixed to a "vertical" portion, in a cross pattern configuration, perpendicular to the horizontal portion. As such, the vertical portion extends from the user's forehead, over the crown of the head to the back of the head, also including apertures for insertion of protective inserts to provide additional protection.

In still another headband embodiment, a total of three such bands are utilized for maximum coverage of critical areas of the head. In any instance, the sweatband of the present invention functions to effectively absorb perspiration in the traditional sense, as well as provide an appropriate level of ventilation and breathing, reducing heat in the process. The sweatband is also expandable, much in the manner of a traditional headband.

4

When the sweatband is used beneath a helmet, it takes additional time for impact forces to reach the user's head, thus providing greater protection. Moreover, the open spaces provided by the design allow for an additional dimension of protection, as impact forces must travel additional distances to reach the user. As such, the spreading of forces allows the present invention to provide significantly greater absorption and dissipation that the prior art.

In another embodiment, the sweatband is designed to be placed around a lower leg area of a user, at least one insert is placed within the sweatband, and the insert positioned to protect a shin of a user. In this embodiment, the width of the sweatband may be approximately as wide as the shin area. The overall circumference may be reduced to fit snugly around the calf area to protect the entire shin. In the preferred embodiment, hook and loop fasteners or Velcro® can be used to adjust the fit as desired.

Likewise, in an additional embodiment, the sweatband is designed to be placed around an upper leg area of a user, at least one insert is placed within the sweatband, and the insert positioned to protect at least the hamstring area. In this instance, the width of the band is increased to protect the hamstring area. The overall circumference of the band may be reduced so that the band fits snugly around the hamstring area. In this embodiment, hook and loop fasteners or Velcro® may be used to adjust the fit as desired.

Furthermore, in another embodiment, the sweatband is designed to be placed around the knee of a user, at least one insert is placed within the sweatband, and the insert positioned to protect this critical area. In this instance, the width of the band is increased to sufficiently protect the knee. The overall circumference of the band may be reduced so that the band fits snugly around the knee, and hook and loop fasteners or Velcro® may be used to adjust the fit as desired.

Moreover, the sweatband may be designed to be placed around an arm of a user, in which case at least one insert is placed within the sweatband, and the insert positioned to protect the wrist and forearm area. In this instance, the width of the band is increased to protect the wrist and forearm area. The overall circumference of the band may be reduced so that the band fits snugly around the wrist and forearm area. As with the above-noted embodiments, hook and loop fasteners or Velcro® may be used to adjust the fit as desired.

In addition, the sweatband may comprise removable polymeric inserts for the purpose of protecting the user. This provides the user with the option of utilizing only the sweatband portion beneath the helmet, if desired. As noted, the inserts are either foam-like or polymeric, functioning to absorb and dissipate impact forces with which the user comes in contact. General studies have shown that properly placed foam padding may reduce impact forces by better than thirty (30) percent.

Regarding the specific impact absorption performance characteristics of the sweatbands of the present invention, following is a summary of the results of preliminary pilot testing.

The independent measure of interest was peak G (i.e. impact deceleration). The dependent variable of impact velocity and energy were held constant at 1.9 m/s and 9.2 J, respectively. An ISO headform (size L–medium adult) with triaxial accelerometer (Kistler) mounted at the approximate center of mass was dropped by means of a bi-rail basket guide (similar to CEN 960 for ice hockey) from a height of 30 cm (see FIG. 1)

US 7,234,174 B2

5

Ten initial tests were conducted without any sweatbands mounted to provide baseline measures. Three impacts per sample were conducted with approximately 30 seconds between impacts.

The initial ten tests without sweatbands produced peak G values of 652.4 G's. With the sweatbands of the present invention introduced, impact absorption (i.e. the ratio between no sweatband versus with sweatband) demonstrated values up to 83% (average of three impacts). Such illustrates the benefits of usage of the present invention as compared to all prior art.

Importantly, the inserts of the resent invention may be of a variety of widths, and may be strategically placed within the sweatband, such as in the areas most vulnerable to concussion or injury upon impact. As such, a three to five inch curved section of padding material is located in the forehead area in the preferred mode of manufacture.

The concussion rate reported in soccer is reported to be the same as in tackle football. Thus, precise placement of the appropriate forehead protective insert is significant in several respects. Precise placement of the appropriate forehead protective insert is significant in reducing the incidence of concussion and other injury, and is particularly important with regard to children who may be inexperienced in playing the sport in question, rendering more susceptible to collisions. Such necessitates usage of the present invention, which provides a lightweight and non-burdensome means to absorb and dissipate a substantial portion of the impact forces associated with collisions.

Young children dashing around a playing field can bash their heads together, get kicked in the head, experience player-to-player contact, have their heads hit the ground, come in contact with a goal post, or inadvertently get hit in the forehead area with the ball.

The Consumer Product Safety Commission has recently raised awareness regarding the risk of concussion from head injuries. Moreover, the risk of sustaining a concussion is especially high for children. Accordingly, the frontal forehead and temporal area must be protected better than any other area. Although it may not prevent it, the present invention reduces the incidence of concussion.

Second concussions are particularly damaging when players have yet to fully recover from first concussions. It should also be noted that many children engage in physical play in which elbows commonly strike the head in the forehead area. Frequently, children do not fully recover from such concussions. The present invention also serves to mitigate the incidence of cuts and bruises associated with such collisions.

With regard to the enhanced embodiments of the present invention, the crown of the head may be protected by a relatively small protective insert, such as a curved two inch piece of foam or semi-rigid polymer.

Regarding the practicality of the invention, the polymeric inserts may be removed from the sweatband so that both the sweatband and inserts may be conveniently washed. The sweatband may also be washed with the inserts in place, if desired. Moreover, the invention uniquely acts as a two-sided sweatband. When one side is wet, the reverse side can then be used, allowing the wet side to dry. Thus, in total, the invention provides a novel means to further protect the head of the athlete, while effectively functioning to absorb perspiration.

Moreover, the present invention may be manufactured in a variety of sizes, so as to render the benefits of same available to athletes of all ages.

6

Likewise, in order to render the sweatband effective for usage in a variety of applications, both the insert and sweatband itself may be of a variety of widths, tailored to the portion of the head intended to be protected by same. A varying quantity of foam or semi-rigid inserts may also be utilized, depending upon the sport for which the sweatband is intended to be used.

In summation, in light of the foregoing, it is an object of the present invention to provide protective sweatbands that are used by players of many sports, including children.

It is a further object of the invention to provide protective sweatbands that are lightweight, cool and comfortable to wear and use, and relatively inexpensive to manufacture.

It is an additional object of the invention to provide protective sweatbands that provides significantly greater absorption and dissipation of impact forces due to the presence of an additional layer of protection, and due to the open spaces in the design.

It is another object of the invention to provide sweatbands that are manufactured in a variety of previously determined sizes.

Finally, another object of the invention is to provide sweatbands with protective inserts that may be permanently placed therein or removed.

The novel features which are considered characteristic for the invention are set forth in the appended claims. The invention itself, however, both as to its construction and its method of operation, together with additional objects and advantages thereof, will be best understood from the following description of the embodiments when read and understood in connection with accompanying drawings.

DESCRIPTION OF DRAWINGS

FIG. 1 is a front perspective view of the sweatband of the present invention, indicating general size and configuration of the foam or polymeric protective insert therefor.

FIG. 2 is a front perspective view of an alternate embodiment of the sweatband of the present invention, illustrating both horizontal and vertical sweatband members, and indicating general size and configuration of the foam or polymeric protective inserts therefor.

DETAILED DESCRIPTION

FIG. 1 is a front perspective view of the sweatband of the present invention, indicating general size and configuration of the foam or polymeric protective insert therefor. Specifically, sweatband (12) is manufactured of soft and pliable fabric or materials, much like traditional sweatbands and headbands. The sweatband (12) comprises an exterior portion (12A) and interior portion (12B).

Insert (16) is placed within the sweatband (12). Such may be permanently placed, or, alternatively, may be removable. In such instance, the insert may be placed in the sweatband through at least one aperture, which may be located either upon the exterior surface of the band (12A) for convenience and easy access, or, alternatively may be located upon the interior surface (12B) to maintain an aesthetically-pleasing appearance. In the preferred mode, insert (16) is relatively thin in nature, and may be in the form of foam padding or a semi-rigid, pliable polymer.

In the preferred head-worn mode, the device is a "horizontal" sweatband portion, much like a typical headband. This provides a protective device that is of a familiar shape to the user, and is easy to both put on and remove. Furthermore, the device keeps the user cool during play, while

US 7,234,174 B2

7

providing significantly more protection in the critical area of the forehead than achieved through usage of conventional sweatbands.

FIG. 2 is a front perspective view of an alternate embodiment of the present invention, illustrating both horizontal and vertical sweatband members, and indicating general size and configuration of the foam or polymeric protective inserts therefor. Once again, sweatband (12) comprises an exterior portion (12A) and interior portion (12B). Again, insert (16) may be permanently placed, or may be placed within the sweatband (12) through at least one aperture, which may be located either upon the exterior surface of the band for convenience and easy access, or, alternatively may be located upon the interior surface to maintain an aesthetically-pleasing appearance. The insert may also comprise apertures (22) which function to allow air to pass therethrough.

In the enhanced mode, the horizontal member is affixed to a "vertical" portion that is perpendicular to the horizontal portion, extending from the user's forehead, over the crown of the head, and to the back of the head. This provides additional protection to the user, as the insert located at the crown of the head also functions to effective absorb and dissipate impact forces in the event inadvertent contact is made with another player, ball or object.

In a further enhanced mode, the horizontal member is affixed to a "vertical" portion that is perpendicular to the horizontal portion, extending from the user's forehead, over the crown of the head, and to the back of the head, and is also affixed to a second vertical portion that crosses the first vertical portion, extending from a first side, over the crown of the head, and to a second side of the head. This provides still more protection to the user, as the additional band functions to effectively absorb and dissipate even more impact forces in the event contact is made with another player, ball or object.

Importantly, the open spaces provided by the design allow for an additional dimension of protection, as impact forces must travel additional distances to reach the user. As such, the spreading of forces allows the present invention to provide significantly greater absorption and dissipation that the prior art.

In any instance, the sweatband of the present invention comprises inserts for the purpose of protecting the user. In the preferred mode, the inserts are polymeric and function to absorb and dissipate impact forces with which the user comes in contact. Importantly, the inserts may be strategically placed within the sweatband, such as in the areas most vulnerable to concussion or injury upon impact. In one mode, the polymeric inserts may be removed from the sweatband so that the sweatband may be conveniently washed. In total, the invention provides an enhanced means to protect the athlete, while effectively functioning to absorb perspiration.

In relation to any embodiment, the insert may be manufactured of a polyethylene or semi-rigid material, polyurethane, or a combination of polymeric materials that have memory. The thickness of the insert may vary according to need, but in all instances, the insert functions to significantly improve the absorption and dissipation of primary forces to better protect the user.

In all such cases, the sweatbands may be manufactured in a variety of previously-determined sizes, functioning to render same effective for multiple persons.

8

With regards to all descriptions and graphics, while the invention has been illustrated and described as embodied, it is not intended to be limited to the details shown, since it will be understood that various omissions, modifications, substitutions and changes in the forms and details of the device illustrated and in its operation can be made by those skilled in the art without departing in any way from the spirit of the invention.

Without further analysis, the foregoing will so fully reveal the gist of the present invention that others can readily adapt it for various applications without omitting features that, from the standpoint of prior art, constitute essential characteristics of the generic or specific aspects of this invention. What is claimed as new and desired to be protected by Letters Patent is set forth in the appended claims.

What is claimed is:

1. An apparatus for enhancing absorption and dissipation of forces for sweatbands comprising:

a soft, pliable sweatband of a generally annular configuration, the sweatband further comprising an exterior portion and interior portion,

the sweatband designed to be placed around the head of a user, from the forehead to back of the head,

at least one insert permanently placed within the sweatband, the insert relatively thin in nature and positioned to protect at least the forehead area of a user, the insert curved in configuration, the insert of sufficient length to protect an intended area and of sufficient width, the sweatband reversible, functioning to allow the interior portion to dry while the exterior portion is placed against the user,

the apparatus functioning to absorb perspiration and absorb and dissipate impact forces, with only remaining forces distributed to the user.

2. The apparatus as described in claim 1, wherein the insert is soft, pliable padding material with consistent memory.

3. The apparatus as described in claim 1, wherein the insert is a semi-rigid polymeric material.

4. The apparatus as described in claim 3, wherein the polymeric material is selected from the ground consisting of polyurethane, polymers, and co-polymers, alone or in combination.

5. The apparatus as described in claim 1, wherein the insert comprises apertures which function to allow air to pass therethrough.

6. The apparatus as described in claim 1, wherein ends of the sweatband are permanently affixed to one another and the sweatband is slid over an area intended to be protected.

7. The apparatus as described in claim 1, wherein the apparatus is utilized in activities selected from the group consisting of soccer, basketball, football, hockey, baseball, softball, lacrosse, skiing, horseback riding, climbing, skateboarding, roller skating, cycling, motorcycling, automobile racing, and snowmobiling.

8. The apparatus as described in claim 1, wherein the inserts are manufactured in a variety of previously determined sizes, functioning to render the inserts effective for multiple previously determined sporting events.

9. The apparatus as described in claim 1, wherein the sweatband may be washed with the insert permanently in place.

* * * * *

# EXHIBIT "B"

US006675395B1

(12) **United States Patent**           (10) **Patent No.:**     **US 6,675,395 B1**
    Abraham                               (45) **Date of Patent:**     **Jan. 13, 2004**

(54) **APPARATUS FOR ENHANCING ABSORPTION AND DISSIPATION OF IMPACT FORCES FOR SWEATBANDS**

(76) Inventor:  **Carl J. Abraham**, 3 Baker Hill Rd., Great Neck, NY (US) 11023

( * ) Notice:  Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/225,866**

(22) Filed:  **Aug. 22, 2002**

(51) Int. Cl.[7] ........................... **A63B 71/10; A42B 3/00**
(52) U.S. Cl. ................. **2/425; 2/181; 2/411; 2/DIG. 2; 2/DIG. 11**
(58) Field of Search ............................. 2/425, 411, 181, 2/DIG. 11, DIG. 2

(56)                **References Cited**

U.S. PATENT DOCUMENTS

|  |  |  |  |
|---|---|---|---|
| 532,567 A | * 1/1895 | Larwood, Jr. | 2/421 |
| 1,434,854 A | * 11/1922 | Stall | 2/181 |
| 2,783,474 A | * 3/1957 | Campagna et al. | 2/181 |
| 4,613,993 A | 9/1986 | Steele | 2/411 |
| 4,896,378 A | 1/1990 | Campana | 2/70 |
| 4,910,804 A | * 3/1990 | Lidgren | 2/209.3 |
| 4,947,488 A | 8/1990 | Ashinoff | 2/181 |
| 5,146,630 A | * 9/1992 | Richard | 2/181 |
| 5,175,887 A | 1/1993 | Kim | 2/174 |
| 5,329,638 A | 7/1994 | Hansen | 2/16 |
| 5,377,360 A | * 1/1995 | Fleitman | 2/181 |
| 5,640,721 A | * 6/1997 | Jackson | 2/DIG. 11 |
| 5,882,205 A | * 3/1999 | Peterson | 434/251 |
| 5,930,841 A | 8/1999 | Lampe | 2/411 |
| 5,946,734 A | * 9/1999 | Vogan | 2/412 |
| 5,963,989 A | * 10/1999 | Robertson | 2/411 |
| 6,000,062 A | 12/1999 | Trakh | 2/171 |

|  |  |  |  |
|---|---|---|---|
| 6,247,181 B1 | * 6/2001 | Hirsch et al. | 2/207 |
| 6,266,827 B1 | * 7/2001 | Lampe et al. | 2/414 |
| 6,349,416 B1 | 2/2002 | Lampe | 2/411 |
| 6,397,399 B1 | * 6/2002 | Lampe et al. | 2/425 |
| 6,438,761 B1 | * 8/2002 | McGarrity | 2/410 |
| 6,565,461 B1 | 5/2003 | Zatlin | 2/411 |

FOREIGN PATENT DOCUMENTS

|  |  |  |  |  |
|---|---|---|---|---|
| GB | 2134370 A | * 8/1984 | ......... | A41D/13/00 |
| GB | 2220556 A | * 1/1990 | ......... | A42B/3/00 |

* cited by examiner

*Primary Examiner*—Rodney M. Lindsey

(57)                **ABSTRACT**

A sweatband designed to be worn on the head of a user engaged in activities such as soccer. Specifically, in the preferred mode, the device comprises a "horizontal" sweatband portion, much like a typical headband. In an enhanced mode, the horizontal member is affixed to a "vertical" portion that is perpendicular to the horizontal portion, extending from the user's forehead, over the crown of the head, and to the back of the head. In either instance, the sweatband of the present invention comprises inserts for the purpose of protecting the user, which may be permanently placed or removable. In the preferred mode, the inserts are polymeric and function to absorb and dissipate impact forces with which the user's head comes in contact. Importantly, the inserts may be strategically placed within the sweatband, such as in the areas most vulnerable to concussion or injury upon impact. In addition, the polymeric inserts may be removed from the sweatband so that the sweatband may be conveniently washed. Alternatively, the sweatband may be washed with the insert permanently placed therein. In total, the invention provides a novel, lightweight means to protect the head of the athlete, while effectively functioning to absorb perspiration.

**12 Claims, 2 Drawing Sheets**





12B

12A

12

10

16

Fig. 1



Fig. 2

US 6,675,395 B1

<table>
<tr><td>1</td><td>2</td></tr>
</table>

**APPARATUS FOR ENHANCING ABSORPTION AND DISSIPATION OF IMPACT FORCES FOR SWEATBANDS**

BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention is a sweatband designed to be worn on the head of a user engaged in activities such as soccer. Specifically, in the preferred mode, the device comprises a generally tubular "horizontal" sweatband portion, much like a typical headband. In an enhanced mode, the horizontal member is affixed to a "vertical" portion that is perpendicular to the horizontal portion, extending from the user's forehead, over the crown of the head, and to the back of the head.

In either instance, the sweatband of the present invention comprises inserts for the purpose of protecting the user, which may be permanently placed or removable. In the preferred mode, the inserts are polymeric and function to absorb and dissipate impact forces with which the user's head comes in contact. Importantly, the inserts may be strategically placed within the sweatband, such as in the areas most vulnerable to concussion or injury upon impact. In addition, the polymeric inserts may be removed from the sweatband so that the sweatband may be conveniently washed. In total, the invention provides a novel, lightweight means to protect the head of the athlete, while effectively functioning to absorb perspiration.

2. Description of the Prior Art

Numerous innovations for protective devices have been provided in the prior art that are described as follows. Even though these innovations may be suitable for the specific individual purposes to which they address, they differ from the present invention as hereinafter contrasted. The following is a summary of those prior art patents most relevant to the invention at hand, as well as a description outlining the differences between the features of the present invention and those of the prior art.

1. U.S. Pat. No. 6,000,062, invented by Trakh, entitled "Protective Headband For Soccer Players"

The patent to Trakh describes improved head protection for soccer players comprising a headband formed of resilient material which may be worn alone or inside a conventional soccer helmet to cushion the effects of impacts to the head, especially for children in their formative years.

2. U.S. Pat. No. 4,613,993, invented by Steele et al., entitled "Protective Head Gear With Tubular Rings"

The Steele et al. invention describes protective head gear comprising a plurality of concentric tubular rings formed of soft, yieldable material. The rings which are filled with non-flamable, light, yieldable material, are gradually reduced diametrically and joined by flexible ribbons. A chin strap and a rear support strap detachably maintain the rings on the head of the user.

3. U.S. Pat. No. 5,930,841, invented by Lampe et al., entitled "Soccer Headguard"

The Lampe et al. invention relates to an improved headguard for athletes and in particular soccer players. In accordance with one embodiment of the invention, a headguard is provided which includes a headcover and an adjustable head strap disposed on a perimeter of the head for drawing sections of the headcover together. The headcover includes padding having at least a front portion and a top portion and also includes a flexing section. The flexing section of the headcover is positioned such that, when the head strap is adjusted, at least a portion of the headcover flexes at the flexing section to generally conform to at least a portion of the head of a wearer.

4. U.S. Pat. No. 6,349,416, invented by Lampe et al., entitled "Headguard-Protective Sports Headband"

The patent to Lampe et al. describes a protective headguard to be worn by an athlete having a protective central pad, a rear pad, an adjustable strap system interconnecting the rear pad and the central pad, and one or more of a lack of any protective padding which would cover the side of the athlete's head when the headguard is worn, a channel defined by the central pad extending substantially horizontally above the athlete's brow ridges and below the athlete's frontal bone when the headguard is worn, a slot in the rear pad extending substantially vertically from the athlete's occipital bone and accommodating passage of a ponytail when the headguard is worn, a single unitary liner, bands encircling the central pad and releasably securing a liner to the central pad, a removable sleeve, a spine pad extending from the front panel to the rear pad perceptible lines of demarcation on the exterior surface of the central pad.

5. U.S. Pat. No. 6,247,181, invented by Hirsch et al., entitled "Bandana-Head Protector Using Fabric And Closed Cell Foam"

The Hirsch et al. invention provides a device designed to reduce head injuries among soccer players, and others who would not otherwise wear head protection. It integrates closed-cell foam padding into a traditional bandana form. Foam padding is sewn between layers of fabric in positions which will provide a degree of protection from rotational forces and from direct blows to the forehead, sides, and top of the head.

6. U.S. Pat. No. 4,896,378, invented by Campana, entitled "Protective Wrist Band"

The patent to Campana describes a protective wrist band having a composite body adapted to extend around a wearer's wrist and having complementary connector means on opposite ends for releasably holding the band around the wrist. The wrist band body has an inner layer of a porous, absorbent, fabric material and a thicker shock-absorbing outer layer of a resilient, fluid-impervious, rubber-like closed cell material.

7. U.S. Pat. No. 5,329,638, invented by Hansen et al., entitled "Protective Wristband"

The patent Hansen et al. describes a protective wristband with integrally woven inner and outer layers of an absorbent stretchable material to provide an endless hollow interior, and a cushioned shield disposed between the layers such that the shield is concealed to provide the appearance of a conventional, unprotective wristband.

8. U.S. Pat. No. 5,175,887, invented by Kim, entitled "Absorbent Headband"

In the patent to Kim, an absorbent headband is provided which includes a resilient inner frame and one or more absorbent outer covers. The outer cover is generally tubular, and closed at each end. The outer cover is provided with a slot for removably inserting the inner frame member into the interior of the outer cover. A method is provided for absorbing perspiration which includes the steps of providing a resilient inner member which is generally u-shaped, providing a tubular outer cover, inserting the inner member into the outer cover, and placing the headband on the head of the wearer.

9. U.S. Pat. No. 4,947,488, invented by Ashinoff, entitled "Forehead Guard"

The Ashinoff invention describes a forehead guard consisting of a closed loop of a terrycloth or similar stretch

US 6,675,395 B1

| 3 | 4 |

material tube and an unattached semi-circular plastic shock-absorbing member within the tube adapted to assume a forehead position on the user while the terrycloth tube is stretched about the back of the user's head to complete the positioning thereof

The sweatbands of the prior art generally illustrate wide sweatbands without inserts, lightweight helmets with multiple open areas, head protecting items in the style of bandanas, forehead protective plates, and protective wrist bands.

In contrast, the present invention is a sweatband that comprises removable foam or polymeric inserts which function to absorb and dissipate impact forces. The inserts are placed within the sweatband in areas most vulnerable to concussion or injury. The inserts may also be removed so that both the inserts and sweatband may be conveniently washed. The sweatbands may also be washed with the inserts permanently in place. Therefore, the invention provides a novel, lightweight means to protect the head of the athlete, while effectively functioning to absorb perspiration.

## SUMMARY OF THE INVENTION

The present invention is an improved, protective sweatband designed to be worn on the head of a user engaged in activities such as soccer, now the most popular team sport in the United States amongst both boys and girls. The American Academy of Pediatrics classifies soccer as a contact/collision sport and most contact sports use protective headgear. Soccer is the only sport in the world that encourages children to use their heads to hit the ball, yet no protective headgear is worn.

In the preferred mode of manufacture, the device of the present invention comprises a "horizontal" sweatband portion, much like a typical headband, which includes a plurality of apertures for the insertion of protective material such as foam padding or a semi-rigid insert, within a generally tubular perspiration-absorbing fabric. Ends of the tubular band are joined with one another via means selected from the group consisting of snaps, hook and loop fasteners, or buttons to effectively contain the insert(s) and provide a secure fit for the user. Alternatively, the ends of the band may be permanently affixed, such as by being sewn together.

In an enhanced mode, the horizontal sweatband may be affixed to a "vertical" portion, in a cross pattern configuration, perpendicular to the horizontal portion. As such, the vertical portion extends from the user's forehead, over the crown of the head to the back of the head, also including apertures for insertion of protective inserts to provide additional protection.

In either instance, the sweatband of the present invention functions to effectively absorb perspiration in the traditional sense, as well as provide an appropriate level of ventilation and breathing, reducing heat in the process. The sweatband is also expandable, much in the manner of a traditional headband.

In addition, the sweatband comprises removable inserts for the purpose of protecting the user. As noted, the inserts are either foam-like or polymeric, functioning to absorb and dissipate impact forces with which the user's head comes in contact. Studies have shown that properly placed foam padding may reduce impact forces by better than fifty percent.

Importantly, the inserts may be of a variety of widths, and may be strategically placed within the sweatband, such as in the areas most vulnerable to concussion or injury upon impact. As such, particularly for usage in soccer played by

small children, a three to five inch curved section of padding material is located in the forehead area. The concussion rate reported in soccer is reported to be the same as in tackle football. Thus, precise placement of the appropriate forehead protective insert is significant in several respects.

Firstly, it is important to consider that in the sport of soccer, players intentionally "head" the ball, or intentionally deflect or direct the ball with their forehead, on a regular basis. Studies have shown that such heading may cause forces equal to 150 to 200 pounds of force, which, especially with repetition, can cause damage to the brain. A particular study performed in the Netherlands found that, compared to swimmers or track athletes, soccer players scored significantly lower on tests that measured memory, visual and verbal memory, visual analysis and planning, and mental flexibility. In addition, Dr. Muriel Lezek of the Oregon Health Sciences University has stated "Those test results suggest that these players would be slower at learning and remembering new material that they hear or see." Moreover, a 1988 publication stated ". . . families should be aware that even children diagnosed with "mild" traumatic brain injury may experience subtle changes in cognitive ability and behavior."

Children are especially at risk to the foregoing, as their brains are still developing. Moreover, the young and inexperienced player often wants to head the ball but lacks appropriate technique and skill, and typically fails to give with the ball, thus failing to dissipate the impact forces.

The American Youth Soccer Organization recommends that children under ten years old not head the ball. However, young children do not always follow the recommendation and, inadvertently, do get hit in the forehead area.

In fact, children athletes even participate in "heading drills" of three to four minutes each week, during which they will probably be hit on the head ten to fifteen times by a ball tossed from approximately ten feet away. All of the above necessitates usage of the present invention, which provides a lightweight and non-burdensome means to absorb and dissipate a substantial portion of the impact forces associated with such heading.

"Heading" a soccer ball does not usually cause enough trauma to injure an adult player's head. However, young children dashing around a soccer field can bash their heads together, get kicked in the head, experience player-to-player contact, have their heads hit the ground, come in contact with a goal post, or inadvertently get hit in the forehead area with the ball. The Consumer Product Safety Commission has raised awareness about the risk of injury from collisions such as goalposts or another player's head/body, and a recent study recommends that soccer develop and adopt methods to prevent head injuries, as the risk of sustaining a concussion in the sport of soccer is high. Based on concussion history, the odds are that one out of two soccer players will wind up with a concussion with-in a ten year period.

Given the speed at which the game is played, the fact that soccer is classified as a contact sport by the American Academy of Pediatrics, and the relative lack of head protective equipment typically found in the sport, the present invention is highly needed to alleviate and/or minimize the risk of a host of injuries, most notably concussions, which are often difficult to identify. Second concussions are particularly damaging when players have yet to fully recover from first concussions. It should also be noted that many children engage in physical play in which elbows commonly strike the head in the forehead area. The present invention also serves to mitigate the incidence of cuts and bruises associated with such collisions.

US 6,675,395 B1

5

With regard to the enhanced embodiment of the present invention, the crown of the head may be protected by a relatively small protective insert, such as a curved two inch piece of foam or semi-rigid polymer.

Regarding the practicality of the invention, the polymeric inserts may be removed from the sweatband so that both the sweatband and inserts may be conveniently washed. Moreover, the invention uniquely acts as a two-sided sweatband. When one side is wet, the reverse side can then be used, allowing the wet side to dry. Thus, in total, the invention provides a novel, lightweight means to protect the head of the athlete, while effectively functioning to absorb perspiration.

Moreover, the present invention may be manufactured in a variety of sizes, so as to render the benefits of same available to athletes of all ages.

Likewise, in order to render the sweatband effective for usage in a variety of applications, both the insert and sweatband itself may be of a variety of widths, tailored to the portion of the head intended to be protected by same. A varying quantity of foam or semi-rigid inserts may also be utilized, depending upon the sport for which the sweatband is intended to be used.

In addition, it should be noted that the sweatband of the present invention may be designed and colored in a stylish manner, such as to match the team colors appearing on the players' uniform or footwear. This is expected to enhance the acceptance of the invention, particularly amongst the above-noted smaller children. The sweatband may also be reversible, allowing for additional possibilities of colors and designs.

Furthermore, regarding usage of the invention during play, it is important to note that the present invention does not affect the angle or control exerted when heading the soccer ball. As such, the invention enables the player to be protected without interfering with his or her natural skill. Finally, it is also worth noting that the present invention does not increase the distance when heading the ball, thus the game is not adversely affected by its usage.

In summation, in light of the foregoing, it is an object of the present invention to provide protective sweatbands that are used for soccer players, and for children in particular.

It is a further object of the invention to provide protective sweatbands that are lightweight, cool and comfortable to wear and use, and relatively inexpensive to manufacture.

It is a further object of the invention to provide sweatbands that are manufactured in a variety of previously determined sizes.

Another object of the invention is to provide sweatbands with protective inserts that may be easily removed for washing purposes. The sweatbands may also be washed with the inserts permanently in place.

Finally, it is an object of the invention to provide sweatbands that are manufactured in a variety of previously determined colors and designs, so as to match the decor of uniforms or equipment upon with which they are used.

The novel features which are considered characteristic for the invention are set forth in the appended claims. The invention itself, however, both as to its construction and its method of operation, together with additional objects and advantages thereof, will be best understood from the following description of the embodiments when read and understood in connection with accompanying drawings.

BRIEF DESCRIPTION OF PREFERRED EMBODIMENTS

FIG. 1 is a front perspective view of the sweatband of the present invention, indicating general size and configuration of the foam or polymeric protective insert therefor.

6

FIG. 2 is a front perspective view of an alternate embodiment of the sweatband of the present invention, illustrating both horizontal and vertical sweatband members, and indicating general size and configuration of the foam or polymeric protective inserts therefor.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

FIG. 1 is a front perspective view of the sweatband of the present invention, indicating general size and configuration of the foam or polymeric protective insert therefor. Specifically, sweatband (12) is manufactured of soft and pliable fabric or materials, much like traditional sweatbands and headbands. The sweatband (12) comprises an exterior portion (12A) and interior portion (12B).

Insert (16) is placed within the sweatband (12) through at least one aperture, which may be located either upon the exterior surface of the band (12A) for convenience and easy access, or, alternatively may be located upon the interior surface (12B) to maintain an aesthetically-pleasing appearance. Insert (16) is relatively thin in nature, and may be in the form of foam padding or a semi-rigid, pliable polymer.

Thus, in the preferred mode, the device is a "horizontal" sweatband portion, much like a typical headband. This provides a protective device that is of a familiar shape to the user, and is easy to both put on and remove. Furthermore, the device keeps the user cool during play, while providing significantly more protection in the critical area of the forehead than achieved through usage of conventional sweatbands.

FIG. 2 is a front perspective view of an alternate embodiment of the sweatband of the present invention, illustrating both horizontal and vertical sweatband members, and indicating general size and configuration of the foam or polymeric protective inserts therefor. Once again, sweatband (12) comprises an exterior portion (12A) and interior portion (12B). Insert (16) is placed within the sweatband (12) through at least one aperture, which may be located either upon the exterior surface of the band for convenience and easy access, or, alternatively may be located upon the interior surface to maintain an aesthetically-pleasing appearance.

In the enhanced mode, the horizontal member is affixed to a "vertical" portion that is perpendicular to the horizontal portion, extending from the user's forehead, over the crown of the head, and to the back of the head. This provides additional protection to the user, as the insert located at the crown of the head also functions to effective absorb and dissipate impact forces in the event inadvertent contact is made with another player, ball or object.

The enhanced mode still keeps the user cool during play, as both the horizontal and vertical portions are relatively narrow in width, allowing for proper air circulation. Moreover, the device remains easy to put on and remove, as the simple configuration remains less burdensome than helmets and pre-existing headgear.

In either instance, the sweatband of the present invention comprises removable inserts for the purpose of protecting the user. In the preferred mode, the inserts are polymeric and function to absorb and dissipate impact forces with which the user's head comes in contact. Importantly, the inserts may be strategically placed within the sweatband, such as in the areas most vulnerable to concussion or injury upon impact. In addition, the polymeric inserts may be removed from the sweatband so that the sweatband may be conveniently washed. In total, the invention provides a novel,

US 6,675,395 B1

7

lightweight means to protect the head of the athlete, while effectively functioning to absorb perspiration.

In relation to either embodiment, the insert may be manufactured of a polyethylene or semirigid material, polyurethane, or a combination of polymeric materials that have memory. The thickness of the insert may vary according to need, but in all instances, the insert functions to significantly improve the absorption and dissipation of primary forces directly into the sweatband to better protect the user.

In all such cases, the sweatbands may be manufactured in a variety of previously determined sizes, functioning to render the pre-formed pads effective for multiple persons.

Moreover, the sweatbands may be manufactured in a variety of previously determined colors, designs, or reflective materials. Thus, such will function to match a decor of the uniform or equipment with which it is used, rendering the same even more desirable to the user.

With regards to all descriptions and graphics, while the invention has been illustrated and described as embodied, it is not intended to be limited to the details shown, since it will be understood that various omissions, modifications, substitutions and changes in the forms and details of the device illustrated and in its operation can be made by those skilled in the art without departing in any way from the spirit of the invention.

Without further analysis, the foregoing will so fully reveal the gist of the present invention that others can readily adapt it for various applications without omitting features that, from the standpoint of prior art, constitute essential characteristics of the generic or specific aspects of this invention. What is claimed as new and desired to be protected by letters patent is set forth in the appended claims.

What is claimed is:

1. An apparatus for enhancing absorption and dissipation of forces for sweatbands comprising:

a soft, pliable sweatband of a generally annular configuration, the sweatband comprising an exterior portion and interior portion,

at least one insert removably placed within the sweatband through at least one aperture located on the exterior of the sweatband, the insert relatively thin in nature and positioned to protect the forehead area of a user,

the sweatband able to be washed with the insert in place therein,

the sweatband reversible in nature, functioning to allow the interior portion to dry while the exterior portion is placed against the head of the user,

the apparatus functioning to absorb and dissipate impact forces, with only remaining forces distributed to the user.

2. The improved protective apparatus as described in claim 1, wherein the insert is a soft, pliable padding material with consistent memory.

3. The improved protective apparatus as described in claim 1, wherein the insert is a semirigid polymeric material.

8

4. The improved protective headgear apparatus as described in claim 3, wherein the polymeric material is selected from the group consisting of polyurethane, a combination of polymers, and a combination of co-polymers.

5. The improved protective apparatus as described in claim 1, wherein the apparatus is manufactured in a variety of sizes.

6. The improved protective apparatus as described in claim 1, wherein the apparatus is utilized by soccer players.

7. The improved protective apparatus as described in claim 1, wherein the insert can be removed and washed.

8. The improved protective apparatus as described in claim 1, wherein the insert is curved in configuration, and is of a length in the range of three to eight inches functioning to render the inserts effective for multiple previously determined sporting events.

9. The improved protective apparatus as described in claim 1, wherein the sweatbands are manufactured in a variety of previously determined colors, and designs, functioning to match a décor of uniform and other equipment used in conjunction therewith.

10. An apparatus for enhancing absorption and dissipation of forces for sweatbands comprising:

a soft, pliable horizontal sweatband of a generally annular configuration, the sweatband comprising an exterior portion and interior portion and designed to be placed around the head of a user, from the forehead to back of the head, at least one insert removably placed within the horizontal sweatband through at least one aperture located on the exterior of the sweatband, the insert relatively thin in nature and positioned to protect the forehead area of a user, and

a soft, pliable vertical sweatband affixed to the horizontal sweatband, the vertical sweatband comprising an exterior portion and interior portion and designed to extend from the user's forehead over the crown of the head, and to the back of the head, at least one insert removably placed within the vertical sweatband through at least one aperture located on the exterior of the sweatband, the insert relatively thin in nature and positioned to protect at least one additional area of the head,

the sweatband able to be washed with the insert in place therein,

the sweatband reversible in nature, functioning to allow the interior portion to dry while the exterior portion is placed against the head of the user,

the apparatus functioning to absorb and dissipate impact forces, with only remaining forces distributed to the user.

11. The improved protective apparatus as described in claim 10, wherein the inserts are curved in configuration, and of a length in the range of one to three inches.

12. The improved protective apparatus as described in claim 10, wherein the inserts are removably placed within the sweatband.

*     *     *     *     *

# EXHIBIT "C"

Case 1:07-cv-00680-MPT    Document 35-1    Filed 08/10/2009    Page 4 of 11

(19) **United States**
(12) **Patent Application Publication**    (10) Pub. No.: **US 2007/0011796 A1**
     Manzo                                 (43) Pub. Date:        **Jan. 18, 2007**

(54) **PROTECTIVE ATHLETIC BAND**

(75) Inventor:   **Joseph S. Manzo**, Lansdale, PA (US)

    Correspondence Address:
    **JOHN F. LETCHFORD**
    **ARCHER & GREINER, P.C.**
    **ONE CENENNIAL SQUARE**
    **HADDONFIELD, NJ 08033 (US)**

(73) Assignee:   **Brain Pad, Inc.**, Conshohocken, PA (US)

(21) Appl. No.:   **11/419,560**

(22) Filed:      **May 22, 2006**

**Related U.S. Application Data**

(60) Provisional application No. 60/700,128, filed on Jul. 18, 2005.

**Publication Classification**

(51) **Int. Cl.**
    *A41F  19/00*       (2006.01)
(52) **U.S. Cl.**  ................................................. **2/310**

(57)            **ABSTRACT**

A thin athletic band which is economical to manufacture yet provides considerable impact protection coupled with effective perspiration removal.



Patent Application Publication    Jan. 18, 2007    US 2007/0011796 A1



FIG. 1

US 2007/0011796 A1

Jan. 18, 2007

1

## PROTECTIVE ATHLETIC BAND

### CROSS REFERENCE TO RELATED APPLICATION

[0001] The present application claims the benefit of U.S. Provisional Patent Application No. 60/700,128, filed Jul. 18, 2005, which is incorporated herein by reference in its entirety.

### FIELD OF THE INVENTION

[0002] The present invention relates in general to athletic equipment and in particular to protective athletic bands that can be worn about various areas of the human body.

### BACKGROUND OF THE INVENTION

[0003] Many commercially available athletic bands are dedicated to perspiration absorption. A typical example is an elastic terry cloth band commonly known as a "sweatband" that is may be worn around the user's head or wrist. While well suited to absorbing the wearer's perspiration, sweatbands offer little meaningful protection from impacts arising from speeding balls (or other moving sporting equipment), or contact with other players and playing surfaces.

[0004] Other athletic gear are primarily protective in nature and are designed to absorb impacts. These devices are typically much more bulky and complex in construction than conventional sweatbands and are not adapted to provide effective perspiration absorption. An example of such protective gear may be found in U.S. Pat. No. 6,625,820.

[0005] Some athletic bands are constructed as a layer of impact-absorbing material wholly or partially contained within a layer of cloth. Examples of such bands may be found in U.S. Pat. Nos. 4,910,804; 5,946,734; 6,000,062; 6,266,826 and 6,675,395, as well as in Published U.S. Patent Application No. 2002/0189004. Of these, however, only U.S. Pat. No. 5,946,734 addresses the advantage of providing "breathable" impact-absorbing cellular material for the wearer's comfort. However, in the sole embodiment thereof which mentions this feature, the "breathable" open-cell foam is a bulky ⅝ to 1 inch in thickness which renders the band thick and bulky in appearance.

[0006] An advantage exists, therefore, a thin athletic band which is economical to manufacture yet provides considerable impact protection coupled with effective perspiration removal.

### SUMMARY OF THE INVENTION

[0007] The present invention is a protective athletic band including a layer of breathable, moisture wicking material and a layer of perforated, impact-absorbent elastomeric material of less than about 3 mm in thickness. The band may be continuous or a strip having first and second detachably connectable ends. The resultant product is a thin athletic band which is economical to manufacture yet provides considerable impact protection coupled with effective perspiration removal.

[0008] Other details, objects and advantages of the present invention will become apparent as the following description of the presently preferred embodiments and presently preferred methods of practicing the invention proceeds.

### BRIEF DESCRIPTION OF THE DRAWINGS

[0009] The invention will become more readily apparent from the following description of preferred embodiments thereof shown, by way of example only, in the accompanying drawings wherein:

[0010] FIG. 1 is a perspective, partially disassembled view of a protective athletic band according to the present invention.

### DETAILED DESCRIPTION OF THE INVENTION

[0011] FIG. 1 reveals a preferred construction of a protective athletic band according the present invention. The athletic band, identified generally by reference numeral 10, comprises a layer of breathable, moisture wicking material 12 and a layer of impact-absorbent material 14. Although athletic band 10 is preferably constructed as an endless loop it may also be formed as a strip having first and second ends that are detachably connectable to one another such as by buttons, snaps, hook and loop type fasteners, or the like (not shown).

[0012] Moisture wicking layer 12 may be any suitable porous natural, synthetic or blended fabric such as, for example, elastic terry cloth or the like of the type commonly used in conventional sweatbands. According to a preferred embodiment, the moisture wicking layer preferably encloses or envelops the layer 14 of impact-absorbent material.

[0013] The impact-absorbent layer 14 is desirably a very thin, elastic, and breathable material. Layer 14 is preferably less than bout 3 mm in thickness so as to provide the band 10 with a very thin profile comparable to conventional sweatbands. According to the invention, layer 14 is a non-cellular elastomeric material such as natural or artificial rubber, neoprene, Calprene®, or the like, provided with a plurality of perforations 16. A suitable material is a perforated, approximately 1.5 mm thick layer of noncellular Calprene® H-6170. The inventor has observed that such material effectively passes moisture from the wearer while at the same time providing more than a 50% reduction in impact force sensed by a wearer as compared to conventional fabric sweatband material alone. It will be appreciated that greater thicknesses, up to about 3 mm, will produce even greater impact absorption without noticeably compromising the thin profile of athletic band 10.

[0014] Layers 12 and 14 may be joined by any suitable means or method. In preferred embodiment, they are sewn together by conventional sewing equipment. The resultant band is thin and breathable and may be worn about any area of a user's body that is, depending on a particular sport, frequently subject to athletic impact such as the head, wrist, elbow and knee.

[0015] Although the invention has been described in detail for the purpose of illustration, it is to be understood that such detail is solely for that purpose and that variations can be made therein by those skilled in the art without departing from the spirit and scope of the invention as claimed herein.

What is claimed is:

1. A protective athletic band comprising:

layer of breathable, moisture wicking material; and

US 2007/0011796 A1

2

Jan. 18, 2007

a layer of perforated, noncellular elastomeric material of less than about 3 mm in thickness.

2. The protective athletic band of claim 1 wherein said band is an endless loop.

3. The protective athletic band of claim 1 wherein said band is a strip having first and second detachably connectable ends.

4. The protective athletic band of claim 1 wherein said layer of breathable, moisture wicking material is elastic terry cloth.

5. The protective athletic band of claim 1 wherein said layer of perforated, noncellular elastomeric material is a perforated approximately 1.5 mm thick layer of Calprene® H-6170.

6. The protective athletic band of claim 1 wherein said layer of breathable, moisture wicking material substantially encloses said layer of perforated, noncellular elastomeric material.

* * * * *

# EXHIBIT "D"

# NORRIS MCLAUGHLIN & MARCUS, PA
## ATTORNEYS AT LAW

RICHARD A. NORRIS
G. ROBERT MARCUS
WILLIAM A. DREIER
PETER D. HUTCHEON
JOEL N. JACOBSON
RICHARD J. SCHACHTER[*]
J. ANTHONY MANGER
WALTER G. REINHARD
VICTOR S. ELGORT
KENNETH D. MESKIN
KEVIN T. O'BRIEN
M. KAREN THOMPSON[1]
IRA S. NOVAK
EDWARD G. SPONZILLI[2]
WILLIAM H. ROBINSON
CARL G. WEISENFELD
THEODORE MARGOLIS
JAMES J. SHRAGER
JOSEPH J. FLEISCHMAN
EZRA N. GOODMAN[1]
STEPHEN M. OFFEN
JOHN J. EAGAN
JAMES H. LASKEY
MICHAEL J. STANTON[**]
KURT G. BRISCOE[2]
WILLIAM C. GERSTENZANG[1]
BRUCE S. LONDA[3]
EDWARD A. HOGAN

ALAN G. BLUMBERG[1]
BURT A. SOLOMON
STUART J. FREEDMAN
DAVID R. STRICKLER
ROBERT C. GABRIELSKI
PATRICK T. COLLINS
GARY N. MARKS
MICHAEL F. CHAZKEL
LAWRENCE N. LAVIGNE
DOUGLAS R. BROWN
MARTHA N. DONOVAN
CHARLES W. MILLER, III
ROBERT MAHONEY
NICHOLAS F. PELLITTA
JOHN N. VANARTHOS
MICHAEL K. LIGORANO
DEAN M. ROBERTS
FRANK T. ARAPS
DANIEL R. GUADALUPE
MARION K. LITTMAN
TIMOTHY P. MCKEOWN
STEVEN A. KARG
DAVID C. ROBERTS
ALISON L. GALER
ANDREW M. PARFOMAK
RIKKI L. FIELD
DAVY E. ZONERAICH
MARGARET R. FLOOD

MARK A. MONTANA
CHRISTA HILDEBRAND[1]
DAVID T. HARMON[1]
JEANNE HAMBURG[1]
JERRY S. D'ANIELLO
JERALYN L. LAWRENCE[**]
SCOTT N. BAACH
ANNMARIE SIMEONE
LINDA A. TANCS
DAVID S. BLATTEIS

JEREMY I. SILBERMAN
CHARLES A. BRUDER
HAEKYOUNG SUH
FERNANDO M. PINGUELO
THEODORE J. KORTH
MIA D. FALLS[1]
KAROL S. ROBINSON[1]
RACHEL A. WINGERTER
CHRISTINE M. SELLITTI
ALYSSA A. VERDERAMI
PÁDRAIG P. FLANAGAN
MARGARET S. O'BRIEN
ROBERT L. SCHMIDT
CHRISTOPHER STEVENSON
JOHN A. JAKUB
PATRICK T. MOTTOLA
KERRY J. ROACH

JEFFREY M. CASALETTO
ANDREA S. GLASER
STEFANIE R. MCNAMARA
MARK D. MARIN
FARAH N. HOMSI
JOSEPH M. MURPHY, JR.
DEANNA L. KOESTEL
JENNIFER C. HOWELL
KEITH D. MCDONALD
GLENN L. STEIN
JANINE N. MATTON
WILLIAM J. BENEDUCE
JESSE P. NASH
KEYA DENNER
JENNIFER J. MARINELLI
JIGNESH J. SHAH
J. JOAN HON
CHRISTINE D. SOCHA

OF COUNSEL:
SERLE I. MOSOFF[3]
MICHELE S. MARCUS

CERTIFIED BY THE SUPREME
COURT OF NEW JERSEY AS A:
[*] CIVIL TRIAL ATTORNEY
[**] MATRIMONIAL LAW ATTORNEY
[1] NY BAR ONLY
[2] MD BAR ONLY
[3] PA BAR ONLY

MAILING ADDRESS:
P.O. BOX 1018
SOMERVILLE, NJ 08876-1018
(908) 722-0700
(908) 722-0755 FACSIMILE

HAND DELIVERY:
721 ROUTE 202-206
BRIDGEWATER, NJ 08807

875 THIRD AVENUE
18TH FLOOR
NEW YORK, NY 10022

WWW.NMMLAW.COM
INFO@NMMLAW.COM  E-MAIL

MERITAS LAW FIRMS WORLDWIDE

October 11, 2006

Brain-Pad, Inc.
Attention: President
322 Fayette Street
Conshohocken, PA 19428

Re:  **Sweatband Advertising**

Gentlemen:

This firm represents Innovative Patents, LLC of Hackensack, New Jersey, the makers of ForceField Protective Gear including the Protective Soccer Headband. Our client has called to our attention a number of actions on your part which appear to involve false, unfair and deceptive advertising. On their behalf we call upon you to immediately cease and desist from such activities relating to your sweatband products.

These false, deceptive and unfair practices include, but are not limited to, the following:

1.  Your use of a burst email sent to a number of participants at the January 2006 Super Show, which was sent out on or about May 6, 2006 and included the claim that your sweatband was "revolutionary" and that "we know of no other impact protective head sweatband on the market". The patented ForceField Protective Soccer Headband was marketed well before that time as well as at the 2006 Super Show and has been appearing with Brain-Pad products in sporting goods catalogs and tradeshows for a number of years. Your ads claiming "patent pending" for your sweatband products would mean that any such application would include a search of prior and existing art and, if properly prepared, would include reference to the ForceField Headband,

NORRIS McLAUGHLIN & MARCUS, PA

Brain-Pad, Inc.
Attention: President
October 11, 2006
Page 2

U.S. Patent 6,675,395B1 issued January 13, 2004. Note that ForceField patent includes references to more than 15 similar products.

2. The Brain-Pad Website and packaging as presented configured contain a number of unfair, false and misleading elements, including a claim of "exclusive Brain-Pad Technology". See Number 1 above as to the exclusive nature of your product.

3. Your website, advertising, and packaging claims that your product "works well under helmets". Our own side-by-side testing performed in July of 2006 indicates that the Brain-Pad Headband performed substantially below the performance of the ForceField Headband and, under some circumstances, the Brain-Pad Headband was no more effective then a non-protective headband. We believe you have insufficient scientific data to make such a claim.

4. Your website is designed to mislead consumers, especially young consumers who may be purchasing your product and require more protection than adults. In particular, while your Website and packaging speaks of impact testing, the tests found on your website relate only to mouth guard products.

5. Your website references "U.S. and Foreign Patents Pending," yet all of the numbered and identified patents on your website relate to your mouth guard products and not to the headband product. The false claim of "patent pending" is in violation of 35 U.S.C. 292.

Unless we receive an indication from you that such violative behavior well be terminated, and in fact is terminated, we must look to the remedies available to us through the courts and/or through the National Advertising Division (a forum with which we know your company is familiar).

Very truly yours,

Norris McLaughlin & Marcus, PA

Stuart J. Freedman

SJF/aej

cc:    Innovative Patents, LLC

# EXHIBIT "E"

# ARCHER & GREINER
### A PROFESSIONAL CORPORATION

*PRINCETON OFFICE*
700 ALEXANDER PARK
SUITE 102
PRINCETON, NJ 08540
609-580-3700
FAX 609-580-0051

*FLEMINGTON OFFICE*
PLAZA ONE
1 STATE ROUTE 12, SUITE 201
FLEMINGTON, NJ 08822-1722
908-788-9700
FAX 908-788-7854

**JOHN F. LETCHFORD**

COUNSELLORS AT LAW

## ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033-0968
856-795-2121
FAX 856-795-0574

www.archerlaw.com

October 30, 2006

*PHILADELPHIA OFFICE*
ONE SOUTH BROAD STREET
SUITE 1620
PHILADELPHIA, PA 19107
215-963-3300
FAX 215-963-9999

*WILMINGTON OFFICE*
300 DELAWARE AVENUE
SUITE 1370
WILMINGTON, DE 19801
302-777-4350
FAX 302-777-4352

**Email Address:**
jletchford@archerlaw.com

**Direct Dial:**          **Direct Fax:**
(856) 354-3013          (856) 673-7013

Stuart J. Freedman, Esq.
Norris McLaughlin & Marcus, PA
P.O. Box 1018
Somerville, NJ 08876-1018

RE:     Brain-Pad Sweatband Advertising
        Our Ref.: BRA138-00401

Dear Mr. Freedman:

We represent Brain-Pad, Inc. ("Brain-Pad") of Conshohocken, Pennsylvania, and this is in reply to your letter dated October 11, 2006 addressed to the president of Brain-Pad. In your letter you list a number of actions taken by Brain-Pad in advertising its new protective sweatband products that your client, Innovative Patents, LLC ("IP"), makers of ForceField Protective Gear, evidently finds offensive. You state that those actions "appear" to involve false, unfair and deceptive advertising and you demand that our client to immediately cease and desist from such activities. The following addresses the alleged inappropriate activities of Brain-Pad in the order presented in your letter.

1.     You refer to a "burst" email purportedly sent by Brain-Pad on or about May 6, 2006 to a number of participants at the January 6, 2006 Super Show. You indicate that that email included a claim that Brain-Pad's new sweatband was "revolutionary" and that "we know of no other impact protective head sweatband on the market." Addressing first Brian-Pad's claim that its new sweatband is revolutionary, it stands behind that statement and made a similar claim in a press release released through the Sporting Goods Manufacturing Association ("SGMA") on May 2, 2006. A copy of the SGMA press release is attached hereto and identified as Exhibit A.

As you will see from the SGMA press release, the component that the release refers to as "revolutionary" is the novel gel band that fills the sweatband. Our client has filed a U.S. patent application and a Patent Cooperation Treaty ("PCT") patent application with the United States Patent and Trademark Office ("USPTO"), discussed below, which describe and claim this

Stuart J. Freedman, Esq.
October 30, 2006
Page 2

feature in detail. Indeed, as explained in those patent applications this feature is novel and patentable and neither our client nor we know of any impact protective sweatband on the market that possesses this component.

Prior to preparing Brain-Pad's patent applications, we conducted two searches of the prior art. Those searches unearthed a number of U.S. patents and pending applications. Among those were several US patents and pending applications in the name of Mr. Carl J. Abraham, including US Patent No. 6,675,395. This patent and Published US Patent Application No. U.S. 2006/0064798 were disclosed to the USPTO via properly filed information disclosure statements All of Mr. Abraham's patents and applications were not disclosed to the USPTO because the USPTO disclosure regulations do not require disclosure of duplicative references, and most, if not all, of Mr. Abraham's patents and patent applications appear disclose the same or highly similar subject matter. We assume that the sweatbands disclosed in Mr. Abraham's patents and patent applications form the basis for your clients products. Indeed, the specification of each of our client's pending sweatband patent applications sets forth in detail the structural distinctions between our client's invention and the sweatbands taught in Mr. Abraham's U.S. Patent No. 6,675,395, among others.

Lastly, to the extent the May 6, 2006 "burst" email that you cite was conceivably harmful to your client (which we categorically deny), it was a one-off event. Brain-Pad has not sent any email advertisements or announcements in connection with its novel protective sweatband product since that date. Thus, Brain-Pad has "ceased and desisted" this particular complained-of activity.

2.    Your second numbered paragraph vaguely refers to "a number of unfair, false and misleading elements, including a claim of 'exclusive Brain-Pad Technology'" presented on the Brian-Pad website and packaging. In response, we invite you to point out with particularity these unfair, false and misleading elements on our client's website and packaging. And, as to our client's claim to the exclusive nature of its product, see Number 1 above.

3.    To the extent our client's website, advertising and packaging contain the statement that its sweatband product "works well under helmets," this statement is perfectly accurate and fair. Because of its thin profile, it simply fits better under helmets than any other bulky protective/reinforced sweatbands presently known to our clients, i.e., *it works well under helmets*. In addition, the claims of impact resistance promoted in our client's marketing activities are indeed supported by research obtained from an independent testing facility located in Taiwan. I have personal possession of a copy of the results of that research, which is a proprietary trade secret of our client. This enhanced impact resistance is also discussed in Brain-Pad's pending U.S. and PCT patent applications.

You will note that nowhere does Brain-Pad state in its packaging, advertising or on its website that its products are more impact-resistant than the ForceField Headband. Had it done so, your own side-by-side testing performed in July 2006 might have had some legal significance.

Stuart J. Freedman, Esq.
October 30, 2006
Page 3

    4.    With due respect, our client's website is not designed to mislead consumers, especially young consumers. Such a statement falls somewhere between silly and outrageous. Please again refer to Brain-Pad's website. Upon reconsideration, you will observe that places its *true and scientifically supported* claims of impact resistance with regard to its sweatbands (see Number 3 above) in intimately close proximity to images of its sweatbands, both on its home page and its sweatbands page.

    5.    Brain-Pad's references to "U.S. and Foreign Patents Pending" on its website is accurate and certainly not in violation of 35 U.S.C § 292. Again, please refer to the sweatband page of Brain-Pad's website. It contains the *true* statement "U.S. and Foreign Patents Pending" in connection with its sweatband products. As indicated in Number 1 above, those applications are in fact pending. Generic yet true assertions of "patent pending" are perfectly acceptable under the law and, as you and your client must surely be aware, have been used in advertising for time immemorial. Nowhere does Section 292 or any other statute or regulation require that specific pending patent application numbers be applied to advertising materials.

    We trust the foregoing has been enlightening and assuages your client's concerns.

    Should you have any questions or require additional information, please do not hesitate to contact me.

                    Sincerely,

                    JOHN F. LETCHFORD

JFL/amm

cc:    Brain-Pad, Inc.

Enclosure

2382259v1

# EXHIBIT "F"

FROM :ABRAHAM BICKLER          FAX NO. :516 4821231          Mar. 30 2007 08:49AM P1

RECEIVED
CENTRAL FAX CENTER

MAR 3 0 2007

# IN THE UNITED STATES PATENT
## AND TRADEMARK OFFICE

In re application of:  CARL ABRAHAM

Serial No.:          11/281,073

Group Art Unit:      3765

Examiner:            Lindsey, Rodney M.

To:  Mail Stop: No Fee Amendment
Commissioner of Patents
P.O. Box 1450
Alexandria, VA 22213-1450

# SUPPLEMENTAL AMENDMENT

In response to the Office Action, kindly amend the above identified patent application as follows:

## CERTIFICATE OF MAILING/TRANSMISSION

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to COMMISSIONER OF PATENTS, P.O. BOX 1450, ALEXANDRIA, VA 22213-1450 and via facsimile to phone number (571) 273-8300.

_____          Dated: 3/30/07

Carl Abraham

FROM :ABRAHAM BICKLER        FAX NO. :516 4821231        Mar. 30 2007 08:50AM P2

## IN THE DRAWINGS:

Revised FIGURE 2 is submitted herewith, illustrating apertures (22) within the insert, us in Claim 12.

2



Fig. 2

FROM :ABRAHAM BICKLER          FAX NO. :516 4821231          Mar. 30 2007 08:50AM P4

## IN THE SPECIFICATION:

Page 18, Line 8, please INSERT – The insert may also comprise apertures (22) which function to

allow air to pass therethrough. --

3

## IN THE CLAIMS:

Please cancel claims 13, 14, and 15.  The list of all claims and their current status is as follows:

1.  **(currently amended)** An apparatus for enhancing absorption and dissipation of forces for sweatbands comprising:

a soft, pliable sweatband of a generally annular configuration, the sweatband further comprising an exterior portion and interior portion,

the sweatband designed to be placed around the head of a user, from the forehead to back of the head,

at least one insert permanently placed within the sweatband, the insert relatively thin in nature and positioned to protect at least the intended forehead area of a user, the insert curved in configuration, the insert of sufficient length to protect an intended area and of sufficient width,

the sweatband reversible, functioning to allow the interior portion to dry while the exterior portion is placed against the user,

the apparatus functioning to absorb perspiration and absorb and dissipate impact forces, with only remaining forces distributed to the user.

2.  **(canceled)** The apparatus as described in claim 1, wherein the insert is permanently placed within the sweatband.

4

3. (canceled) The apparatus as described in claim 1, wherein the insert is removably placed within the sweatband.

4. (previously withdrawn) The apparatus as described in claim 1, wherein the sweatband comprises an exterior portion and interior portion and is designed to be placed around the head of a user, from the forehead to back of the head, at least one insert placed within the sweatband, the insert positioned to protect the forehead area of a user, and a soft, pliable vertical sweatband affixed to the horizontal sweatband, the vertical sweatband comprising an exterior portion and interior portion and designed to extend from the user's forehead over the crown of the head, and to the back of the head, at least one insert placed within the sweatband, the insert positioned to protect at least one additional area of the head.

5. (previously withdrawn) The apparatus as described in claim 1, wherein the sweatband is designed to be fitted and placed around a lower leg area of a user, at least one insert placed within the sweatband, the insert positioned to protect a shin of a user.

6. (previously withdrawn) The apparatus as described in claim 1, wherein the sweatband is designed to be fitted and placed around a knee of a user, at least one insert placed within the sweatband, the insert positioned to protect a knee of a user.

5

FROM :ABRAHAM BICKLER          FAX NO. :516 4821231          Mar. 30 2007 08:51AM P7

7. (previously withdrawn) The apparatus as described in claim 1, wherein the sweatband is designed to be fitted and placed around an arm of a user, at least one insert placed within the sweatband, the insert positioned to protect the wrist and forearm area of a user.

8. (previously withdrawn) The apparatus as described in claim 1, wherein the sweatband is designed to be fitted and placed around an upper leg area of a user, at least one insert placed within the sweatband, the insert positioned to protect at least a hamstring area of a user.

9. (original) The apparatus as described in claim 1, wherein the insert is a soft, pliable padding material with consistent memory.

10. (original) The apparatus as described in claim 1, wherein the insert is a semi-rigid polymeric material.

11. (currently amended) The apparatus as described in claim ~~1~~ 10, wherein the polymeric material is selected from the group consisting of polyurethane, ~~a combination of~~ polymers, and ~~a combination of~~ co-polymers, alone or in combination.

12. (original) The apparatus as described in claim 1, wherein the insert comprises apertures which function to allow air to pass therethrough.

6

13. (canceled) The apparatus as described in claim 1, wherein an aperture is located upon an interior surface of the sweatband.

14. (canceled) The improved protective apparatus as described in claim 1, wherein an aperture is located upon an exterior surface of the sweatband.

15. (canceled) The apparatus as described in claim 1, wherein ends of the sweatband are attached to one another by means selected from the group consisting of hook and loop fasteners, Velcro®, snaps, and at least one button.

16. (original) The apparatus as described in claim 1, wherein ends of the sweatband are permanently affixed to one another and the sweatband is slid over an area intended to be protected.

17. (currently amended) The apparatus as described in claim 1, wherein the apparatus is utilized in activities selected from the group consisting of soccer, basketball, football, hockey, baseball, softball, lacrosse, skiing, horseback riding, climbing, skateboarding, roller skating, cycling, motorcycling, automobile racing, and snowmobiling.

18. (original) The apparatus as described in claim 1, wherein the inserts are manufactured in a variety of previously determined sizes, functioning to render the inserts effective for multiple previously determined sporting events.

7

19. **(canceled)** The apparatus as described in claim 1, wherein the insert can be removed and washed.

20. **(original)** The apparatus as described in claim 1, wherein the sweatband may be washed with the insert permanently in place.

21. **(canceled)** The apparatus as described in claim 1, wherein the insert is curved in configuration, and is of a length in the range of three to eight inches.

22. **(canceled)** The apparatus as described in claim 1, wherein the sweatband is reversible, functioning to allow the interior portion to dry while the exterior portion is placed against the user.

23. **(previously withdrawn)** An apparatus for enhancing absorption and dissipation of forces for sweatbands used in connection with helmets comprising:

a soft, pliable horizontal sweatband of a generally annular configuration, the sweatband comprising an exterior portion and interior portion and designed to be placed around the head of a user, from the forehead to back of the head, at least one insert placed within the sweatband, the insert relatively thin in nature and positioned to protect the forehead area of a user, and a soft, pliable vertical sweatband affixed to the horizontal sweatband, the vertical sweatband comprising an exterior portion and interior portion and designed to extend from the user's forehead over the crown of the head, and to the back of the head, at least one insert placed within the sweatband through at least one aperture on

8

FROM :ABRAHAM BICKLER          FAX NO. :516 4821231          Mar. 30 2007 08:52AM  P10

the sweatband, the insert relatively thin in nature and positioned to protect at least one additional area of the head,

the apparatus functioning to absorb perspiration and absorb and dissipate impact forces, with only remaining forces distributed to the user.

24. (previously withdrawn) The improved protective apparatus as described in claim 23, wherein the insert is permanently placed within the sweatband.

25. (previously withdrawn) The improved protective apparatus as described in claim 23, wherein the insert is removably placed within the sweatband.

26. (previously withdrawn) An apparatus for enhancing absorption and dissipation of forces for sweatbands used in connection with helmets comprising:

a soft, pliable horizontal sweatband of a generally annular configuration, the sweatband comprising an exterior portion and interior portion and designed to be placed around the head of a user, from the forehead to back of the head, at least one insert placed within the sweatband, the insert relatively thin in nature and positioned to protect the forehead area of a user,

a soft, pliable first vertical sweatband affixed to the horizontal sweatband, the vertical sweatband comprising an exterior portion and interior portion and designed to extend from the user's forehead over the crown of the head, and to the back of the head, at least one insert placed within the

9

sweatband through at least one aperture on the sweatband, the insert relatively thin in nature and positioned to protect at least one additional area of the head,

a soft, pliable second vertical sweatband affixed to the horizontal sweatband, the vertical sweatband comprising an exterior portion and interior portion and designed to extend from a first side of the user's head over the crown of the head, and to a second side of the user's head, at least one insert placed within the sweatband through at least one aperture on the sweatband, the insert relatively thin in nature and positioned to protect at least one additional area of the head, the apparatus functioning to absorb and dissipate impact forces, with only remaining forces distributed to the user.

27. **(previously withdrawn)** The improved protective apparatus as described in claim 26, wherein the insert is permanently placed within the sweatband.

28. **(previously withdrawn)** The improved protective apparatus as described in claim 26, wherein the insert is removably placed within the sweatband.

10

FROM :ABRAHAM BICKLER          FAX NO. :516 4821231          Mar. 30 2007 08:52AM P12

## REMARKS

Reexamination, reconsideration and allowance of the present application and claims are respectfully requested.  Should the Examiner consider necessary any formal changes in the specification, claims and/or drawings, it is respectfully asked that such changes be made by Examiner's Amendment, if the Examiner feels this would facilitate passage of the case to issuance.

RESPECTFULLY SUBMITTED,

DATED: 3/30/07

Carl Abraham

11